**INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL 175, Plaintiff–Appellee,**

v.

**THOMAS & BETTS CORPORATION, Defendant–Appellant.**

No. 98–5617.

United States Court of Appeals, Sixth Circuit.

Argued March 17, 1999.

Decided and Filed June 29, 1999.

---

Patrick W. Kocian (argued and briefed), Kenneth A. Jenero (briefed), McBride, Baker & Coles, Chicago, Illinois, for Defendant–Appellant.

Jerry H. Summers (briefed), Jimmy F. Rodgers, Jr. (argued and briefed), Summers & Wyatt, Chattanooga, Tennessee, for Plaintiff–Appellee.

Before: KRUPANSKY, SILER, and BATCHELDER, Circuit Judges.

## OPINION

KRUPANSKY, Circuit Judge.

Thomas & Betts Corporation ("the Company") has appealed summary judgment granted to the International Brotherhood of Electrical Workers, Local 175 ("the Union") in the Union's action to enforce an arbitrator's decision which ordered the Company to reinstate Tony Allman, an employee the Company had discharged.

An arbitrator found that in November 1992, Allman injured his back while working in the Company's Athens, Tennessee factory. Allman commenced treatment with a self-selected doctor drawn from a Company-approved list, in accordance with the Tennessee Workers Compensation Statute. However, after Allman became dissatisfied with this doctor, he began receiving treatment from doctors who did not appear on the approved list.

On January 20, 1993, the Industrial Relations Manager of the Athens plant received a January 18, 1993 medical report from Allman's doctor, certifying that Allman could return to work immediately. Nevertheless, the Company did not hear from Allman until he reported for work on January 26, 1993. Moreover, Allman resumed his absence the next day, without notice to the Company.

Consequently, the Industrial Relations Manager arranged a meeting for February 4, 1993 with Allman and two Union representatives to discuss Allman's failure to follow the Company's written leave and notice procedures. The Industrial Relations Manager explained that, based on the information the Company possessed, Allman should have been at work daily since January 19, 1993. The Industrial Relations Manager reminded Allman that he was required to submit doctor's certificates to support the medical reason for his continued absence, or his job would be in jeopardy of termination. The arbitrator found that Allman was on notice that the Company was demanding strict compliance with medical excuse reporting requirements regarding absences.

Following the February 4, 1993 meeting, Allman furnished a series of medical certificates, the last of which authorized his absence from work until March 25, 1993. However, after March 25, 1993, he neither returned to work nor furnished further medical certificates to extend his absence. The Company, considering this to be a second violation of the collective bargaining agreement, issued a letter to Allman on April 7, 1993, which notified him that the Company had terminated his employment pursuant to Articles VI § H and VII § A of the collective bargaining agreement.

At the arbitration hearing, Allman explained that he did not provide medical certificates authorizing his absence beyond March 25 because he had missed an appointment with his doctor on March 23, 1993. He explained further that on March 11 his doctor had informed him that he needed surgery which did not fall within his workman's compensation coverage nor his regular medical insurance benefits. He was informed by his doctor that in the event he was unable to arrange alternative funding prior to his March 23 appointment, his doctor would certify him as maximally

recovered and thus fit to resume work. On March 30, 1993, Allman elected to undergo the surgery, but neglected to inform his employer. The arbitrator excused Allman's failure to notify his employer, reasoning that the impending surgery and its attendant risks preoccupied Allman.

Article VI § H of the collective bargaining agreement, pursuant to which the Company terminated Allman, provides:

The Seniority of any employees shall be *automatically* terminated if:

\* \* \* \* \* \*

3. The employee violates a leave of absence, or *fails to return at completion of authorized leave,* or

\* \* \* \* \* \*

5. *The employee is absent for three (3) consecutive working days without notifying the Company of the reason for his absence* (unless he presents a reason acceptable to the Company for such failure of notification) and, in this instance, the employee is considered a voluntary quit ...

(Emphases added).

The Company also cited Article VII § A(3) of the bargaining agreement as support for Allman's termination:

A. Employees may request and receive leaves of absence for reasonable cause as determined by the Company, subject to the following regulations:

\* \* \* \* \* \*

3. *Failure to return to work following the expiration of a leave of absence is considered a quit* and automatically forfeits seniority. The Company in applying this paragraph will give due consideration to emergency situations which may prevent an employee from returning to work following a leave of absence. It is expected that the employee will promptly notify the Company of such emergency conditions.

(Emphasis added).

After Allman's termination, the Union filed a grievance, claiming that the Company had violated the collective bargaining agreement.

Pursuant to the collective bargaining agreement, the subject grievance was submitted to arbitration. Having reviewed the collective bargaining agreement and made findings of fact, the arbitrator concluded, "This is not a case in equity, but the labor agreement is not clear on notice requirements for an employee off work due to an on-the-job injury. *Thus, some interpolation of contract terms is permissible.*" (Emphasis added). On this basis he resolved that "[t]he contract as so applied, permits finding that the company unreasonably withheld excusing the grievant's absence from work in the period March 25, 1993 to April 7, 1993."

On cross-motions for summary judgment, the district court upheld the arbitration award. The Company has appealed. This circuit reviews grants of summary judgment *de novo. EEOC v. University of Detroit,* 904 F.2d 331, 334 (6th Cir.1990).

The district court reviewed the arbitrator's decision in light of *Beacon Journal Publishing Co. v. Akron Newspaper Guild, Local No. 7,* 114 F.3d 596 (6th Cir.1997), which recognized that "[t]he Supreme Court has made clear ... that courts must accord an arbitrator's decision substantial deference because it is the arbitrator's construction of the agreement, not the court's construction, to which the parties have agreed." *Beacon Journal Publishing Co. v. Akron Newspaper Guild, Local No. 7,* 114 F.3d 596, 599 (6th Cir.1997). Consequently, courts "review the arbitrator's decision *only* to determine whether the arbitrator was arguably construing or applying the contract and acting within the scope of his authority." *Id.* (Emphasis in original, internal quotations omitted).

■ An arbitrator exceeds his discretionary authority when his "award disregards the collective bargaining agreement and its terms." *Beacon Journal Publishing Co. v. Akron Newspaper Guild,* 114 F.3d 596, 599 (6th Cir.1997). An arbitration award "must draw its essence from the contract and cannot simply reflect the Arbitrator's own notions of industrial justice." *United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

■ Upon review of the collective bargaining agreement and the arbitrator's findings of fact, this court concludes that the district court erred by granting summary judgment to the Union. Article V § C(1) of the collective bargaining agreement provides:

> The arbitrator shall not have authority to add to, or subtract from, or to change, modify, or amend any of the terms or provisions of this Agreement or any of the Company's policies, reasonable rules or regulations not in conflict with the specific terms and provisions of this Agreement.

(Emphasis added.)

The arbitrator's own words attest to his violation of the expressed terms of Article V § C(1), as the arbitrator "interpolat[ed] ... contract terms," i.e., imposed additional requirements, which were not written in the agreement. In spite of the collective bargaining agreement's clear prohibition, the arbitrator added a requirement that the Company may not unreasonably withhold excusing an employee's absence. Such manifest infidelity to the collective bargaining agreement's clear prohibition against the addition of contract terms to the collective bargaining agreement by the arbitrator warrants reversal of the district court decision to enforce the award.

■ When a collective bargaining agreement prohibits the addition of contract terms, the arbitrator may not proceed to do so. *Sears, Roebuck & Co. v. Teamsters, Local Union No. 243,* 683 F.2d 154, 155 (6th Cir.1982). This panel is confronted with an arbitrator who did not "ha[ve] the wit to point to some language in the contract as supposedly supporting his decision." *Lattimer–Stevens Co. v. United Steelworkers,* 913 F.2d 1166, 1171 (6th Cir.1990) (Boggs, J., dissenting).

■ Had the arbitrator not unilaterally resorted to creating contract terms and conditions beyond those that had been negotiated by the parties, he would have been bound to rule in favor of the Company. The clear concise and unambiguous language of the collective bargaining agreement provided that an employee who "is absent for three (3) consecutive working days without notifying the Company of the reason for his absence ... is considered a voluntary quit." In his discussion, the arbitrator concluded that Allman had been absent from the Company without notification from March 25, 1993 until the Company issued its termination letter on April 7, 1993. The arbitrator's departure from the precise language of the collective bargaining agreement compels a ruling favorable to the Company. Any other disposition would be "a total disregard for the plain language of the contract." *International Bhd. of Elec. Workers, Local 429 v. Toshiba America, Inc.,* 879 F.2d 208, 211 (6th Cir.1989). *See United Paperworkers International Union v. Misco, Inc.,* 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).

The court has reviewed and considered the remaining assignments of error and find them to be without merit.

Because the arbitrator's award does not take its essence from the collective bargaining agreement, this panel finds that the arbitrator was not even arguably construing the collective bargaining agreement. Thus, the district court's summary judgment for the Union is **REVERSED**, and enforcement of the arbitrator's award is denied.