**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

LOCAL NO. 7 UNITED FOOD AND
COMMERCIAL WORKERS
INTERNATIONAL UNION,

      Plaintiff - Appellee,

v.

KING SOOPERS, INC., a division and
subsidiary of (respectively) Dillon
Companies, Inc., Kroger Company,

      Defendant - Appellant.

No. 99-1339

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 99-B-515)

---

Emily Fontelle Keimig (Raymond M. Deeny with her on the briefs), Sherman &
Howard, LLC, Colorado Springs, Colorado, for the appellant.

Michael J. Belo, General Counsel, United Food and Commercial Workers Union,
Local No. 7, Wheat Ridge, Colorado, for the appellee.

---

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**ALLEY**, District Judge.[*]

---

    [*] The Honorable Wayne E. Alley, District Judge of the Western District of
Oklahoma, sitting by designation.

**LUCERO**, Circuit Judge.

This is an appeal from the district court's grant of summary judgment to plaintiff-appellee United Food & Commercial Workers International Union, Local No. 7 ("the Union") under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). The Union successfully sought to enforce an arbitrator's award made pursuant to a collective bargaining agreement ("CBA") between the Union and defendant-appellant King Soopers, Inc. We inquire as to whether the district court erred in holding that the arbitration award drew its essence from the CBA and was enforceable. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

The relevant facts in this case are undisputed. In June 1997 Lally Parbhu, an employee of King Soopers and a Union member, took a leave of absence from her job as an all-purpose clerk (cashier/checker) at a King Soopers store in order to visit her ailing father in India. After her return from India in July, she returned to work but then herself fell ill, and a physician wrote a note requesting that she be excused from work until August 4, 1997. Without further notifying King Soopers, however, Parbhu did not return to work on August 4 due to her continued illness.

On August 19, 1997, she called the store to check her work schedule and spoke to the head clerk, who informed her that her employment with King Soopers had been terminated and that she needed to speak with Joe Hernandez, the store manager. Several days later, a meeting was held between Parbhu, Hernandez, and Kim Cordova, a business agent of the Union. At that meeting Parbhu explained she had not reported for work between August 4 and August 19, 1997, because she was ill, though she acknowledged that she should have informed store management of her ongoing absence. Following the meeting, Hernandez suspended her pending further investigation. He consulted with his supervisor, Anna Martinez, and thereupon terminated Parbhu for violation of King Soopers's "no call/no show" policy.

The King Soopers no call/no show policy provides that "[u]nexcused absences, (i.e., not calling or reporting for work for three (3) consecutive work days) will be grounds for immediate discharge." (I Appellant's App. at 94.) Article 40, Section 114 of the CBA governing relations between King Soopers and the Union and employees provides that "no employee who falls within the bargaining unit shall be discharged without good and sufficient cause."[1] (Id. at 45.) The CBA nowhere defines "good and sufficient cause" for termination, nor

---

[1] It is undisputed that Parbhu is included in the bargaining unit and therefore is covered by the CBA.

does it give examples of conduct rising to the level of "good and sufficient cause."  Article 6, Section 14 (the "Rights of Management" section) of the CBA further states that "[t]he Employer retains the right . . . to make necessary reasonable rules and regulations for the conduct of business, providing that said rules and regulations are not in conflict with the terms of this Agreement in any way."  (Id. at 17.)

On September 19, 1997, the Union filed a grievance, protesting the decision to terminate Parbhu.  Pursuant to the CBA's grievance procedure, which provided for an arbitrator to interpret the terms of the CBA, the Union and King Soopers submitted the following question for arbitration:

> Was the Grievant, Ms. Lally Parbhu, terminated for good and sufficient cause?  If not, what is the appropriate remedy?

(Id. at 100.)

After reviewing prior arbitration cases involving grievances filed as a result of a termination decision, the arbitrator in the instant case determined that King Soopers had not terminated Parbhu for good and sufficient cause, despite the fact that the no call/no show policy was reasonable.  "While it is possible," he held, "for violations of the no call/no show rule to be grounds for immediate termination, Ms. Parbhu's discharge did not meet the tests of just cause."  (Id. at 111.)  He based that determination on the following factors, gleaned from his review of past arbitration decisions: (1) Termination for a single offense is

- 4 -

usually restricted to particularly grave breaches of proper conduct such as assault, fighting, or theft, while for less serious violations such as Parbhu's progressive discipline is applied; (2) Parbhu would have likely responded well to progressive discipline, and there was no reason to apply the severe penalty of termination; (3) Arbitrators in previous cases gave consideration to mitigating circumstances such as seniority and prior work history, and because Parbhu had been disciplined only once previously in the six years she had worked for King Soopers, those mitigating circumstances should have been considered; (4) It was King Soopers's practice to call employees who do not report for work, and the termination decision in the instant case was made without attempting to contact Parbhu. As a result, the arbitrator ordered that Parbhu be reinstated with full seniority to her former position or a comparable one, but because she violated the no call/no show rule, he ordered that the termination decision be converted to a term of suspension without pay.

Both the Union and King Soopers thereupon filed suit in United States District Court for the District of Colorado under Section 301 of the LMRA, 29 U.S.C. § 185(a), the former to enforce the arbitrator's award and the latter to vacate it. The Union and King Soopers filed cross-motions for summary judgment, and the district court granted summary judgment to the Union, ordering that the arbitrator's award be enforced. See United Food & Commercial Workers

Union, Local No. 7 v. King Soopers, Inc., 52 F. Supp.2d 1215 (D. Colo. 1999).

King Soopers now appeals.

## II

Our standard of review is well-established: "We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." Simms v. Oklahoma ex rel Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir.), cert. denied, 120 S. Ct. 53 (1999); see also Fed. R. Civ. P. 56(c).

With respect to our review of arbitral awards in labor disputes, we are guided by the following standard, "among the narrowest known to the law," Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7, 886 F.2d 275, 276 (10th Cir. 1989):

> The courts are not authorized to reconsider the merits of any award even though the parties may allege that the award rests on errors of fact or on misinterpretation of the contract. The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements.

United Paperworkers Int'l Union v. Misco, 484 U.S. 29, 36 (1987) (internal quotations and citation omitted). "The parties have contracted for an arbitrator to resolve their disputes, not a court," Litvak Packing Co., 886 F.2d at 276 (citing Misco, 484 U.S. at 37-38) (further citation omitted), and thus "so far as the arbitrator's decision concerns construction of the contract, the courts have no

business overruling [the arbitrator] because their interpretation of the contract" differs, United Steelworkers of Am. v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960).  That policy of exceedingly narrow judicial review is based on the fact that

> the arbitrators under . . . collective [bargaining] agreements are indispensable agencies in a continuous collective bargaining process.  They sit to settle disputes at the plant level—disputes that require for their solution knowledge of the custom and practices of a particular factory or of a particular industry as reflected in particular agreements.

Id. at 596 (footnote omitted).  "Nonetheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice, . . . . his award is legitimate only so long as it draws its essence from the collective bargaining agreement." Id. at 597.  That will be the case "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," Misco, 484 U.S. at 38.  But an award does not draw its essence from the CBA if

> it is contrary to the express language of the contract . . . or . . . is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator . . . . [or] if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without factual support.

Mistletoe Express Serv. v. Motor Expressmen's Union, 566 F.2d 692, 694 (10th Cir. 1977) (internal quotations and citations omitted).

**A**

As an initial matter, we disagree with King Soopers's contention that its no call/no show policy has been incorporated into the CBA and therefore a violation of that policy always constitutes "good and sufficient cause" for termination under the CBA. Although the CBA negotiated between King Soopers and the Union gives King Soopers "the right . . . to make necessary reasonable rules and regulations for the conduct of business, providing that said rules and regulations are not in conflict with the terms of [the CBA] in any way," (Appellant's App. at 17), the right to make such rules is not the right to equate the violation of such rules with "good and sufficient cause" for termination. To hold otherwise would be to allow King Soopers to unilaterally define the meaning of "good and sufficient cause," a right which was not contemplated by the CBA and for which King Soopers must negotiate with the Union.

The Second Circuit was faced with a similar situation in <u>First National Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338,</u> 118 F.3d 892 (2d Cir. 1997). In that case, an arbitrator determined that the violation of a rule promulgated by a supermarket providing for immediate dismissal for certain conduct did not constitute "just cause" for termination under a collective bargaining agreement and reversed the supermarket's termination of an employee. <u>Id.</u> at 895. As in the present case, the collective bargaining

agreement in First National Supermarkets required but did not define "just cause" for termination and gave the supermarket the right to promulgate policies. Id. at 894. The district court upheld the arbitrator's award, and the Second Circuit affirmed, holding that because "just cause" was not defined in the collective bargaining agreement and because "the CBA authorizes the arbitrator to resolve disputes concerning the interpretation or application of its terms, it remains for the arbitrator to determine whether a discharge was for 'just cause.'" Id. at 896 (citation omitted). As for the argument that the supermarket policy was integrated into the CBA, the Second Circuit categorically rejected that claim:

> [The CBA] does indeed give the employer the right to "establish policies"; it also gives the employer the right to "discharge for just cause." It does not, however, provide that any violation of the employer's established policies must necessarily constitute "just cause" for discharge.

Id. Rather, the court concluded that if the supermarket "wished to have an unquestionable right to discharge an employee for any specified conduct, it needed to negotiate for recognition of that right in the CBA." Id. (citation omitted). We agree entirely with the Second Circuit's reasoning, which compels the same result in the instant case. The no call/no show policy is not integrated into the CBA, and therefore we reject King Soopers's argument that the arbitral award does not draw its essence from the CBA because it disregards the

management rights clause.[2]  Rather, the arbitral award properly interprets that clause in conjunction with other provisions of the CBA.

We likewise hold that the arbitrator's decision to consider the no call/no show policy as grounds for discipline draws its essence from the CBA, given his finding that the policy was reasonable and given that it had been promulgated pursuant to the "Rights of Management" section of the CBA, Article 6, Section 14.  Nothing in this opinion should be read as nullifying an arbitrator's duty to

---

[2]  General Drivers, Warehousemen & Helpers Local Union 968 v. Sysco Food Services, Inc., 838 F.2d 794, 796 n.1, 799 n.4 (5th Cir. 1988), on which King Soopers relies for the proposition that the no call/no show policy was integrated into the CBA, is distinguishable on its facts.  In Sysco, the CBA provided that,

> [t]he Union recognizes the right of the Company to make and enforce Rules and Regulations and that violation thereof may be just cause for discipline or discharge of employees.  The only question which may be the subject of a "grievance" is whether or not the disciplined employee did or did not engage in the specific conduct which resulted in the disciplinary action.

Id. at 796.  Thus, in Sysco, the CBA expressly incorporated the employer's rules into its "just cause" provision.  The CBA in the instant case contains no such language, and we will not read such a clause into the CBA absent indications that such was the intention of the parties.  We note that the Fourth Circuit's opinion in Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers International Union, 76 F.3d 606, 609-10 (4th Cir. 1996), also cited by King Soopers, relies on General Drivers for its holding that a rule promulgated unilaterally by the employer is incorporated into the CBA.  See id. at 610.  As noted, the CBA in the present case lacks language specifically permitting the employer to define "good and sufficient cause" by rule, such as that in General Drivers, and thus Mountaineer Gas, too, must be distinguished.  To the extent Mountaineer Gas can be otherwise interpreted, it is contrary to the law of our Circuit.

consider a reasonable company policy promulgated pursuant to that company's rights under a collective bargaining agreement. But the weight the arbitrator decides to accord that policy, as discussed below, is not a matter for judicial review.[3]

**B**

With regard to whether the arbitrator's award otherwise drew its "essence" from the CBA, in the present case, the terms of the agreement were ambiguous, nowhere defining "good and sufficient cause." Under our precedent, "[i]t is a well-recognized principle that, except where expressly limited by a labor agreement, an arbitrator may consider and rely upon extrinsic evidence, including negotiating and contractual history of the parties, evidence of past practices, and the common law of the shop, when interpreting ambiguous provisions." Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union, 24 F.3d 86, 88-89 (10th Cir. 1994). Indeed, the very nature of the arbitrator's role in settling disputes under collective bargaining agreements is to

---

[3] The instant case is thus distinguishable from Conoco, Inc. v. Oil, Chemical & Atomic Workers International Union, Nos. 87-1482, 86-1639, 1988 WL 163062, at *3 (10th Cir. Sept. 12, 1988) (unpublished), cited by appellant, in which "the arbitrator failed to address or in any way distinguish the established rules of conduct which directly conflicted with the basis of his decision." In the present case the arbitrator did not ignore the no call/no show policy and specifically evaluated the appropriateness of termination and other disciplinary measures in light of the policy and the circumstances of Parbhu's case.

examine such practices.  See Enterprise Wheel & Car Corp., 363 U.S. at 596.

Specifically, in Champion Boxed Beef Co., 24 F.3d at 88 (citing United

Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 581-82 (1960)),

we upheld an arbitrator's award reinstating an employee terminated for

insubordination based in part on the arbitrator's consideration of "testimony

concerning the Company's current practice . . . when other employees have balked

at accepting work assignments."  See also Mistletoe Express Serv., 566 F.2d at

695 ("In a proper case an arbitrator, in reliance on custom or usage in an industry,

may construe a 'just cause' provision of a labor contract to include a progressive

discipline requirement and may determine that certain conduct is 'just cause' for

discipline but not for discharge.").  That is precisely what the arbitrator did in the

present case.  He reviewed termination and disciplinary practices, which in his

judgment compelled the conclusion that termination was too severe a penalty for

Parbhu's breach of the no call/no show policy, although the breach of that policy

was deserving of disciplinary measures.[4]  There is no question but that the

---

[4] Contrary to appellant's contention, the fact that the arbitrator considered the no call/no show policy as grounds for discipline in this case but not for termination did not nullify the management rights section of the CBA or add new terms or conditions to that agreement.  As discussed, the fact that the CBA is ambiguous as to the meaning of "good and sufficient cause" and provides for arbitration indicates the parties' intention to have that term interpreted by the arbitrator, and none of the arbitrator's methods for evaluating the grievance are contrary to the terms of the CBA.

arbitrator's determination drew its essence from the CBA, "and we cannot substitute our interpretation of the contract for [the arbitrator's]." Litvak Packing Co., 886 F.2d at 276.

Appellant mistakenly relies on our decisions in International Union of Operating Engineers, AFL-CIO, Local No. 670 v. Kerr-McGee Refining Corp., 618 F.2d 657, 659-60 (10th Cir. 1980), and Mistletoe Express Service, 566 F.2d at 695, for the proposition that the arbitrator's examination of extraneous evidence—specifically, evidence of past practice regarding progressive discipline—is inappropriate. Mistletoe Express Service and Kerr-McGee involved situations in which the agreements at issue expressly provided for certain conduct as just cause for discharge, and the arbitrators substituted their own views for express language in the collective bargaining agreements. See Kerr-McGee, 618 F.2d at 658-60; Mistletoe Express Serv., 566 F.2d at 694-95. In the present case, by contrast, the term "good and sufficient cause" was not defined in the CBA. The arbitrator was acting well within the scope of his authority and the essence of the CBA in reaching his result.

## III

The judgment of the district court is **AFFIRMED**.