**TOLEDO BLANK, INC., Plaintiff**

v.

**TEAMSTERS LOCAL 20, Defendant**

**No. 3:02CV7062.**

United States District Court,
N.D. Ohio,
Western Division.

Oct. 3, 2002.

Spengler Nathanson, Spengler Nathanson, Toledo, for Petitioner.

Gallon & Takacs, Toledo, for Respondent.

## ORDER

CARR, District Judge.

Plaintiff Toledo Blank, Inc. brings this suit against defendant Teamsters Local 20 seeking a declaratory judgment to vacate or modify an arbitrator's award reinstating former employee Tracy Cabell. This court has jurisdiction pursuant to 29 U.S.C. § 185(a). Defendant brings a counterclaim to enforce the arbitrator's award. Pending are cross-motions for summary judgment. For the following reasons, defendant's motion shall be granted and plaintiff's motion shall be denied.

## BACKGROUND

Toledo Blank, Inc. (Toledo Blank, or the Company) stamps steel blanks for the auto industry at a plant in Toledo, Ohio. The Company is a party to a collective bargaining agreement with Teamsters Local 20 (the Union).

Four provisions of the agreement are relevant to this case.

Section 5.1 required binding arbitration of employee grievances that could not be settled between Company and Union representatives. Either party to the agreement could request arbitration. The agreement provided: "[t]he arbitrator shall not have the authority to add to, subtract from or modify the terms of this agreement." (Doc. 1, Ex. A, § 5.1).

Section 11.5 stated: "[n]o employee shall be discharged except for just and proper cause." (Doc. 1, Ex. A, § 11.5).

Section 3.1 gave the Company "the exclusive right to adopt and enforce any and all work rules and disciplinary rules not inconsistent with the provisions of this Agreement. . . . The Union shall have five (5) work days to protest in writing under the grievance procedure the reasonableness of any new or revised work or disciplinary rule." (Doc. 1, Ex. A, § 3.1).

Section 6.4, captioned, "Termination of Seniority," provided: "[e]mployees shall forfeit any right to seniority . . . for any of the following reasons hereinafter specified: . . . (e) [d]ischarge of an employee for just cause. . . . (g) [f]or other causes set forth in this Agreement or violation of the Employer's rules and regulations." (Doc. 1, Ex. A, § 6.4).

On June 1, 1999, pursuant to § 3.1 of the collective bargaining agreement, the Company promulgated revised work rules, preceded by a disclaimer stating, in part: "[t]his manual does not supersede or change any of the provisions of the labor contract for Toledo Blank, Inc. union employees." (Doc. 24, Ex. 1, p. 2).

The rules listed 13 violations that "will lead" to "immediate termination." (Doc. 1, Ex. B, p. 1). One of those violations was insubordination, defined at § 1.1 as including "refusal or intentional failure to perform work assigned." (Doc. 1, Ex. B, p. 1, § 1.1). The Union did not use the grievance procedure, established at § 3.1, to protest the reasonableness of the work rules.

The collective bargaining agreement covered Tracy Cabell, the grievant in this dispute. In January, 2001, the Company changed the set-up for its 102 press, requiring laborers to reach when lifting parts off a conveyor belt. Cabell performed the job using the new procedure. On February 2, 2001, Cabell protested the change because he said the new set-up strained his back. Cabell missed work from February 12, 2001, to February 19,

2001, because of a herniated disc in his back. He returned to work on February 20, 2001, without medical restriction, and was assigned to the 102 press.

On the day Cabell returned, he asked foreman Robert Kalisz to change the set-up on the press. When Kalisz refused, Cabell said his back hurt and he was going home. Cabell asked safety director Joseph Kutchenriter, Jr. to change the set-up, and he, too, refused. Cabell then reportedly swore at Kutchenriter and left the plant, saying he did not feel well.

Neither foreman Kalisz nor production coordinator John Moran, who decided to terminate Cabell, told Cabell he would be fired if he did not do his work. Toledo Blank fired Cabell on February 20, 2001, for insubordination in violation of work rule § 1.1. Cabell filed a grievance, which the parties to the collective bargaining agreement could not resolve. As a result, the Union submitted the grievance to arbitrator Mark J. Glazer (the Arbitrator), who heard it on October 15, 2001.

The Arbitrator found Cabell was insubordinate under work rule 1.1 when he refused to perform the assigned work. He also acknowledged that "[o]rdinarily, discharge could be required under the rules for insubordination." (Doc. 1, Ex. C, p. 12). The Arbitrator, however, determined there was not just cause for dismissal. Instead, he found Cabell deserved a lesser penalty.

To support this conclusion, the Arbitrator found it was a mitigating factor that Cabell was not warned he would be fired if he did not do the assigned work. The Arbitrator found this lack of notice violated the "just cause" standard in § 11.5 of the collective bargaining agreement, which required, in his opinion, the employee to understand his conduct will lead to discharge. (Doc. 1, Ex. C, p. 12). The Arbitrator also found Cabell refused the work

because of his back pain, not because he wanted to defy the Company. This, too, was a mitigating factor for the Arbitrator. Consequently, on January 9, 2002, the Arbitrator reinstated Cabell with seniority, but without back pay and benefits.

The Company filed this suit seeking to vacate or modify the Arbitrator's award. The Union counterclaimed, seeking declaratory, monetary, and injunctive relief to compel the Company's compliance with the Arbitrator's award and alleging violations of 29 U.S.C. § 185, 9 U.S.C. § 2, and O.R.C. § 2711.01.

In April, 2002, the Company contacted the Union and proposed settlement, offering money in exchange for Cabell's resignation and release of the claims by Cabell and the Union. The Union did not accept the offer.

In late April and early May, 2002, the Company offered Cabell money and a positive recommendation in exchange for his resignation. Cabell accepted the Company's offer and resigned on May 3, 2002.

Each party then filed a motion for summary judgment.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that

there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be accepted as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

## DISCUSSION

### I. Mootness

The Company claims the settlement between the Company and Cabell renders this action moot. The Union argues an agreement between the employee and the Company does not prevent the Union from enforcing the collective bargaining agreement in court.

■ A prohibition on direct dealing between employers and their unionized employees is a fundamental principle of union representation.[1] *J.I. Case Co. v. NLRB*, 321 U.S. 332, 337, 64 S.Ct. 576, 88 L.Ed. 762 (1944). Bargaining carried on by the employer directly with employees, whether a minority or majority, who have not revoked their designation of a bargaining agent, would subvert the mode of collective bargaining which the National Labor Relations Act ordains. *Medo Photo Supply Corp. v. NLRB*, 321 U.S. 678, 64 S.Ct. 830, 88 L.Ed. 1007 (1944).

■ Section 9(a) of the NLRA, 29 U.S.C. § 159(a), permits an employer and its unionized employees to adjust their relationship without union intervention. The statute only permits this if the adjustment is not inconsistent with the collective bargaining agreement, and if the union has the opportunity to be present when the adjustment is negotiated. *UAW v. Yard–Man, Inc.*, 716 F.2d 1476, 1484 (6th Cir. 1983) (company settlement with active, unionized employees would not constitute accord and satisfaction of contract dispute or preclude a union from pursuing case in court).

■ In this case, the Union was unaware of Cabell's settlement negotiations with the Company. According to Ernest Boose, the Union's business representative, the Union learned about Cabell's set-

---

1. The Union is not asking this court to decide whether the Company's alleged direct dealing violates the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* The Union has filed a charge with the National Labor Relations Board alleging the Company's actions violated federal law. I consider only whether the settlement between Cabell and the Company divests this court of its Article III jurisdiction, and conclude it does not.

tlement only after he accepted the Company's offer. (Doc. 25, ¶¶ 5–9).

Cabell's acceptance of the Company's settlement, therefore, does not preclude the Union from bringing this action. *See United Bhd. of Carpenters & Joiners v. Am. Superior Midwest, Inc.* (W.D.Ark. 1974), 1974 WL 113, 1974 U.S. Dist. LEXIS 8305 (settlement between an employee and employer during a lawsuit between the employee's union and the employer does not preclude the union's case from continuing).

To permit individual employees to adjust their differences with their employers without union involvement would be contrary to the fundamental principle of exclusive union representation. Permitting a settlement between a unionized employee and his or her employer to moot a union's action against the employer would prevent the courts from resolving important issues affecting other employees in the bargaining unit. For example, the issue of interplay between Toledo Blank's work rules and the collective bargaining agreement remains important to Toledo Blank and its unionized employees. This action is not moot.

## II. Whether the Arbitrator exceeded his authority

Because this action is not moot, I move to the substantive issue: whether the Arbitrator exceeded his authority under the collective bargaining agreement when he modified the Company's express penalty for insubordination. The Company argues the Arbitrator did not have authority to modify the work rule mandating discharge for insubordination. The Union argues the Arbitrator had authority to find the Company lacked just cause to discharge

Cabell. I will address these arguments based on the alleged violation of 29 U.S.C. § 185.

Federal courts deciding cases under § 301 of the Labor Management Relations Act, codified at 29 U.S.C. § 185, base their review of arbitrators' findings upon three cases decided by the United States Supreme Court in 1960, now known as the *Steelworkers* Trilogy.[2] That triad of cases made clear the standard for judicial review of arbitration awards is deferential: "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. at 596, 80 S.Ct. 1358.

The Court in *Enterprise Wheel*, at 363 U.S. at 597, 80 S.Ct. 1358, explained the rationale for this narrow standard of review:

When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

The Court stressed the arbitrator's right to interpret the contract at 363 U.S. 593, 599, 80 S.Ct. 1358:

---

**2.** *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); and *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

The Court, however, cautioned that arbitrator authority was not unlimited, and gave lower federal courts the power to refuse enforcement of awards at 363 U.S. at 597, 80 S.Ct. 1358:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

■ An arbitrator's award fails to draw its essence from the collective bargaining agreement if it: 1) conflicts with the express terms of the agreement; 2) imposes additional requirements not expressly provided in the agreement; 3) is without rational support or cannot be rationally derived from the terms of the agreement or 4) is based on general considerations of fairness and equity instead of the precise terms of the agreement. *Nat'l Gypsum Co. v. United Steelworkers of Am.,* 793 F.2d 759, 766 (6th Cir.1986).

■ The *Steelworkers* trilogy was reaffirmed in 1987, in *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.,* 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). In *Misco,* the United States Supreme Court admonished lower federal courts to be "more deferential to the arbitration process." *Eberhard Foods, Inc. v. Handy,* 868 F.2d 890, 891 (6th Cir.1989). The federal courts are not authorized to reconsider the merits of an award, even though the parties may allege the award rests on errors of fact or on misinterpretation of the contract. *Misco,* 484 U.S. at 36, 108 S.Ct. 364. The Court concluded: "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." 484 U.S. at 38, 108 S.Ct. 364.

After *Misco,* the Sixth Circuit noted that judicial review of arbitration awards was "one of the narrowest standards of judicial review in all of American jurisprudence." *The Lattimer–Stevens Co. v. United Steelworkers of Am.,* 913 F.2d 1166, 1169 (6th Cir.1990).

Still, though, post-*Misco* courts in the Sixth Circuit are willing to limit arbitration awards. Thus, as I have previously stated:

An arbitrator ... does not have unfettered discretion. An arbitrator is confined to the interpretation and application of the collective bargaining agreement, and although he may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions. When an arbitrator disregards the collective bargaining agreement and its terms or departs from arguably construing the contract, the court must vacate the award.

*Wyandot, Inc. v. Local 227, UFCW Union,* 205 F.3d 922, 929 (6th Cir.2000) (citation omitted) (Carr, J., sitting by designation).

The dispositive issue in cases reviewing arbitrators' awards is contract clarity, because, as noted, arbitrators may construe ambiguous contract language. *Wyandot,* 205 F.3d at 929. In this case, the Union

argues that a contract provision expressly limiting the Arbitrator's authority to review remedies is the only provision with the power to establish clarity; because the contract did not contain such a provision, the Union argues, the Arbitrator had the power to construe the contract and review the remedy. The Company argues the mandatory language in the work rules results in clarity, stripping the Arbitrator of his power to review the penalty of discharge after he found the grievant was insubordinate.

A third view suggests that where the contract does not define "just cause," and where the contract does not expressly incorporate the work rules or otherwise expressly limit the arbitrator's authority to review remedies, the arbitrator can interpret the contract's "just cause" provision to trump any mandatory penalty provisions in the work rules. This third view refines the Union's position, in fact, because the contract's express incorporation of work rules can expressly limit the arbitrator's authority to review remedies. I will address these arguments after considering a preliminary issue of waiver.

### A. Waiver

The Company argues that after the Arbitrator made the factual finding that Cabell was insubordinate, he lost authority to consider whether the Company had just cause to terminate him. The Union argues the Company waived this argument because the Company did not present this issue to the Arbitrator.

The issue for arbitration was framed: "[w]as the discharge of the grievant for just cause, and if not, what should be the remedy?" (Doc. 1, Ex. C, p. 2). The Company did not dispute the framing of the issue.

An arbitrator has the authority to decide the issues submitted, under *Champion Int'l Corp. v. United Paperworkers Int'l Union,* 779 F.2d 328, 335 (6th Cir.1985) (citation omitted):

> [T]he extraordinary deference given to an arbitrator's ultimate decision on the merits applies equally to an arbitrator's threshold decision that the parties have indeed submitted a particular issue for arbitration.... It must appear that an arbitrator has clearly exceeded the scope of the submission for a court to overturn or modify an award on that ground.

In this case, the parties submitted the issue of whether there was just cause, so the Arbitrator was authorized to render a decision within the scope of the submission. His decision that there was no just cause to fire Cabell clearly was within the scope of the issue presented. The record, however, does not disclose whether the Company was on notice that the Arbitrator would not consider its argument before he awarded Cabell reinstatement. I will, therefore, address the Company's argument.

### B. Work rule/collective bargaining agreement interplay

Assuming the Company's argument was not waived, this case presents a fairly novel issue for courts reviewing arbitrators' awards: whether a "just cause" provision in a collective bargaining agreement applies to mandatory penalty provisions in company work rules.

As noted, the overarching consideration for courts reviewing arbitration awards is clarity. When an arbitrator's award is challenged, the courts consider whether "the language of the contract at hand is sufficiently clear so as to deny the arbitrator the authority to interpret the agreement as he did." *Eberhard,* 868 F.2d at 891; *cited in DBM Techs. v. 227, UFCW Local,* 257 F.3d 651, 658 (6th Cir.

2001); *Bruce Hardwood Floors v. S. Council of Indus. Workers,* 8 F.3d 1104, 1108 (6th Cir.1993).

The Company is trying to prove, then, that the collective bargaining agreement's "just cause" language clearly did not apply to the work rules it promulgated under § 3.1, the contract's management rights clause.

I find, however, that the collective bargaining agreement is unclear as to the relationship between the contract and the work rules, because the agreement does not define "just cause" and does not expressly incorporate the work rules. This lack of clarity, as well as the fact that the contract did not contain any other clause removing the Arbitrator's remedial powers, gave the Arbitrator authority to interpret the contract and apply the ambiguous "just cause" clause to the work rules. Because I also find the Arbitrator's interpretation draws its essence from the agreement, I must uphold his award.

■ Other circuits have held that when a collective bargaining agreement does not define "just cause" and does not explicitly incorporate offenses that will lead to termination, a reviewing court must defer to an arbitrator's interpretation of the "just cause" provision, even as applied to work rules promulgated under a general management rights clause. This is true when the work rules provide for discretionary penalties. *See Trailmobile Trailer, LLC, v. Int'l Union of Electronic, Elec., Salaried, Mach. and Furniture Workers, AFL–CIO,* 223 F.3d 744, 747 (8th Cir. 2000); *IMC–Agrico Co. v. Int'l Chemical Workers Council of the United Food & Commercial Workers Union,* 171 F.3d 1322, 1328 (11th Cir.1999). It is equally true when the work rules provide for mandatory penalties. *See Local No. 7 United Food and Commercial Workers Int'l Union v. King Soopers, Inc.,* 222 F.3d 1223,

1227 (10th Cir.2000); *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Employees Union Local 338,* 118 F.3d 892, 896–97 (2d Cir.1997).

In *Trailmobile,* for instance, the collective bargaining agreement provided that employees would be discharged for just cause, while the employee handbook fixed discharge as the possible penalty for fighting. The company argued in *Trailmobile* that the arbitrator's finding that the employee was involved in a fight constituted an implicit finding of just cause for discharge. The company based its argument on the employee handbook's penalty provision and the contract's management rights clause, which gave the company the right to determine appropriate punishment. 223 F.3d at 747.

The Eighth Circuit disagreed, holding that because the contract did not expressly incorporate the rules, and because the contract did not otherwise limit the arbitrator's remedial power, the arbitrator did not violate the contract's plain language when he determined the employee had fought and yet should not be discharged. 223 F.3d at 748; *see also IMC–Agrico,* 171 F.3d at 1327 (same); *Fed. Packaging Corp. v. United Paperworkers Int'l Union,* 940 F.Supp. 1155, 1159 (N.D.Ohio 1996) (arbitrator construed the contract's "just cause" clause as modifying company's work rule recommending termination for insubordination; district court deferred to arbitrator's construction).

Those cases may be distinguished from this case, because the work rules in those cases made discharge permissible, while the work rule in this case made discharge mandatory. This is not, in my view, a material difference.

In *First Nat'l Supermarkets,* for example, the Second Circuit held the collective bargaining agreement's undefined "just

cause" provision applied to the company's work rules, including work rules that mandated discharge as a penalty. The court found "[the contract] does indeed give the employer the right to establish policies; it also gives the employer the right to discharge for just cause. It does not, however, provide that any violation of the employer's established policies must necessarily constitute just cause for discharge." 118 F.3d at 896 (internal quotations omitted); *see also King Soopers, Inc.*, 222 F.3d at 1227 (collective bargaining agreement's undefined "good and sufficient cause" provision applied to work rules mandating discharge; though rules were promulgated under general management rights clause, "the right to make such rules is not the right to equate the violation of such rules with 'good and sufficient cause' for termination").

Toledo Blank makes the same argument in this case, and it, too, must fail. The collective bargaining agreement at § 6.4 appears to allow the Company to terminate employee seniority either for just cause or for violating work rules. In its post-arbitration brief, Toledo Blank argued that: 1) Cabell was insubordinate; 2) the work rule required discharge; and 3) the conduct in light of the work rule, and the fact that the rule was authorized by the collective bargaining agreement, constituted just cause for discharge. Essentially, Toledo Blank argues the contract and the rules establish two independent grounds for dismissal, so a work rule violation constitutes per se just cause.

The Sixth Circuit held unequivocally in *Bruce Hardwood Floors* that the contract's list of offenses for which discharge was possible did not "establish independent just cause and per se just cause grounds for dismissal" separate from the contract's just cause clause. 8 F.3d at 1108. In fact, the court held a previous case involving the same litigants, *S. Council of Indus. Workers v. Bruce Hardwood Floors*, 784 F.Supp. 1345 (M.D.Tenn.1992), was wrongly decided to the extent that it construed the contract to establish independent grounds for dismissal. 8 F.3d at 1108.

In *Bruce Hardwood Floors*, the Sixth Circuit held the contract's list of offenses still was subject to the contract's just cause clause because the contract did not define "just cause." Also, because the contract provided for alternate remedies, the contract did not limit the arbitrator's authority to review remedies. 8 F.3d at 1108. In this case, the contract also did not define "just cause" or limit the Arbitrator's authority to review remedies. The work rule's mandatory discharge provision does not limit the Arbitrator's authority to review the remedy, because the rule is not expressly incorporated into the contract. Under *Bruce Hardwood Floors*, therefore, as well as under *First Nat'l Supermarkets* and *King Soopers*, insubordination cannot constitute per se just cause for termination in this case.

The Eleventh Circuit noted in *IMC–Agrico* that *First Nat'l Supermarkets* is consistent with the Sixth Circuit's *Eberhard* decision. 171 F.3d at 1328 (citing both *Eberhard* and *First Nat'l Supermarkets* for the proposition that "if a collective bargaining agreement does not define 'just cause' and does not include a list of offenses that would lead to termination, then any reviewing court must defer to an arbitrator's interpretation of the scope and meaning of the just cause provisions of the agreement").

In *Eberhard*, the Sixth Circuit ruled the arbitrator had authority to weigh considerations of fairness when reviewing the discharge of an employee who violated a work

rule punishable [3] by termination, because the collective bargaining agreement was "unclear on the question of the arbitrator's authority to determine the appropriate sanction after finding a violation of work rules." 868 F.2d at 890–92.

One section of the agreement in *Eberhard* provided the employer had sole discretion to discharge for cause. Another section of the agreement provided the employer could not discharge employees without just cause. The court found this apparent conflict created a lack of clarity, which was exacerbated by the agreement's failure to mention the work rules. Based on these facts, the Sixth Circuit found there was nothing in the agreement or work rules expressly removing the arbitrator's authority to review the remedy. 868 F.2d at 892.

The decision in *Eberhard*, based on the fact that the contract did not expressly remove the arbitrator's remedial powers, does not conflict with the subsequent cases of *Trailmobile, First Nat'l Supermarkets, King Soopers,* and *IMC–Agrico.* Those cases, as noted, turned on the fact that the contracts authorized work rules in their management rights clauses but did not explicitly incorporate those rules. The contract at issue in *Eberhard*, as noted, did not mention the work rules at all. The court in *Eberhard*, therefore, did not need to discuss the difference between a management rights clause authorizing the employer to create work rules, and the contract's explicit incorporation of the work rules themselves. Presumably, however, a contract's express incorporation of work rules and their corresponding remedies would "expressly limit[ ] or remove[ ] from the arbitrator the authority to review the remedy." *Eberhard.* 868 F.2d at 892.

It is apparent, then, that the approach taken by the Second Circuit in *First Nat'l Supermarkets*, the Eighth Circuit in *Trailmobile,* the Tenth Circuit *in King Soopers,* and the Eleventh Circuit in *IMC–Agrico* is consistent with the approach taken in *Eberhard.* Refining the *Eberhard* approach to include a consideration of whether the contract explicitly incorporates the work rules clarifies the interplay between collective bargaining agreements and employer work rules during the arbitration process, as well as during judicial review.

The Union urges this court to decide this case based on *Eberhard*'s principle that "where nothing in the collective bargaining agreement expressly limits or removes from the arbitrator the authority to review a remedy, a federal court must defer to the arbitrator's construction of the collective bargaining agreement." *Eberhard,* 868 F.2d at 892; *Dixie Warehouse & Cartage v. General Drivers Local 89,* 898 F.2d 507, 511 (6th Cir.1990).

This holding appears to be derived from language in *Misco,* 484 U.S. at 38, 41, 108 S.Ct. 364:

---

3.  It is unclear whether the work rule at issue in *Eberhard* mandated termination or allowed termination in the discretion of the employer. The rule stated employees who fought on company time or property were "subject to discharge," and the court stated the "disciplinary action allowed" was discharge. 868 F.2d at 892. This seems to allow employer discretion. But the company argued that once the arbitrator found the employee had fought, his discretion to review the remedy was removed. 868 F.2d at 893. This seems to indicate a mandatory penalty. Regardless

of whether termination was mandated or merely recommended for a violation of the work rule in *Eberhard,* this court must follow the Sixth Circuit's reasoning in that case. The dispositive fact is not the presence or absence of mandatory language in the work rule; the dispositive facts are that the contract in this case, like the contract in *Eberhard,* did not define "just cause," did not expressly incorporate the work rules, and did not otherwise remove the arbitrator's authority to review penalties.

[W]here it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect.... Normally, an arbitrator is authorized to disagree with the sanction imposed for employee misconduct.... The parties, of course, may limit the discretion of the arbitrator in this respect.

Where there is an express provision limiting the arbitrator's authority to review remedies, the arbitrator's award has been vacated if it exceeds that authority. *See Int'l Bhd. of Elec. Workers, Local 429 v. Toshiba Am., Inc.*, 879 F.2d 208, 210–11 (6th Cir.1989) (contract provided "[a]ny disciplinary action, including discharge taken as a result of a violation of [the no-strike clause] ... shall not be altered or amended in the grievance and arbitration procedures"; arbitrator's award was total disregard of contract's plain language).

But, as I have shown, the arbitrator's authority to review remedies can be expressly limited in another manner. If the collective bargaining agreement itself explicitly incorporates work rules, listing the offenses that will result in instant termination, the agreement does "expressly limit[ ] or remove[ ] from the arbitrator the authority to review a remedy," as contemplated by *Eberhard* and *Dixie Warehouse.* That is, where the contract lists offenses that are per se just cause for termination, the contract has expressly limited the arbitrator's authority to review the penalty.

The contract in this case did not define "just cause," so the Arbitrator had authority to construe the meaning of this ambiguous term. This view is consistent with the Sixth Circuit's holding in *Wyandot* that arbitrators have authority to construe ambiguous terms. 205 F.3d at 929; *see also Trailmobile*, 223 F.3d at 747 (where "just cause" is undefined, arbitrator can con- strue the term as a matter of contract interpretation). Because the contract in this case did not curb the Arbitrator's power, either by explicitly incorporating work rules or by otherwise expressly limiting his remedial powers, the Arbitrator retained the authority to apply any arguably reasonable interpretation of the "just cause" clause to the work rules.

In *Eberhard*, one permissible interpretation of the "just cause" clause was that a finding of just cause always was required to discharge an employee. 868 F.2d at 892. This interpretation did not violate the contract provision stating that the arbitrator had "no power or authority to amend, alter or modify" the agreement. 868 F.2d at 892. That clause, therefore, was not an express limit on the arbitrator's power to review the penalty.

Section 5.1 of the contract in this case contained a similar clause, stating the Arbitrator could not "add to, subtract from or modify" the agreement. Because the work rules were not part of the agreement, the Arbitrator did not violate this clause when he reviewed the penalty.

As the Supreme Court held in *Misco*, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," the award must be upheld. 484 U.S. at 38, 108 S.Ct. 364; *see also Dallas & Mavis Forwarding Co. v. General Drivers, Warehousemen & Helpers, Local Union No. 89*, 972 F.2d 129, 135 (6th Cir.1992) (where arbitrator's interpretation was one of several rational interpretations, court was "not authorized to reject this plausible interpretation"); *Vic Wertz Distributing Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1143 (6th Cir.1990) (arbitrator is authorized to choose among persuasive interpretations of an ambiguous agreement).

One plausible interpretation of the undefined and ambiguous "just cause" provision was that it applied to every employee termination, including terminations for violating work rules with mandatory discharge penalties. Thus the award is derived from the essence of the agreement and must be upheld.

I reject, accordingly, the Company's argument that the mandatory character of the language in its work rules is dispositive. The cases cited by the Company are distinguishable.

Thus, in *Int'l Bhd. of Firemen & Oilers v. Nestle Co.*, 630 F.2d 474 (6th Cir.1980), the collective bargaining agreement itself provided that insubordination "shall" constitute cause for dismissal. The Sixth Circuit vacated the arbitrator's award, finding the arbitrator ignored the agreement's unambiguous language. 630 F.2d at 476.

The Company's reliance on *Int'l Bhd. of Elec. Workers v. Thomas & Betts Corp.*, 182 F.3d 469 (6th Cir.1999), is similarly misplaced. In that case, the collective bargaining agreement provided employees

"shall" be terminated if absent for three consecutive workdays without notifying the company. The arbitrator decided the agreement was unclear and reinstated an employee, and the Sixth Circuit found the arbitrator had disregarded the agreement. 182 F.3d at 472. As in *Nestle*, the mandatory discharge provision in *Thomas & Betts* was in the contract, not in the work rules. *See also Marathon Oil Co. v. Local Union No. 283*, 1997 U.S. Dist. LEXIS 12409 (E.D.Mich.1997) (same).[4]

The decision in *Beacon Journal Publ'g Co. v. Akron Newspaper Guild*, 114 F.3d 596 (6th Cir.1997), is likewise distinguishable. That case did not deal with the interplay between work rules and a collective bargaining agreement. The case held the employer did not violate the collective bargaining agreement by exercising its reserved discretion to assign employee vacations. 114 F.3d at 600. Toledo Blank apparently analogizes this case to its reserved discretion to promulgate work rules and to discharge employees for just cause. But, as noted, the violation of a work rule

---

4. Cases such as *Thomas & Betts* and *Marathon Oil*, in which contracts incorporated work rules with mandatory penalties, are analytically distinct from cases in which contracts incorporated work rules with discretionary penalties; there, courts have found ambiguity and allowed arbitrators to construe the contract's provisions in any reasonable manner. *See Dixie Warehouse and Cartage v. General Drivers Local 89*, 898 F.2d 507, 509 (6th Cir.1990) (arbitrator award reinstating employee upheld because agreement allowed employer to discharge or suspend an employee for drinking); *Bruce Hardwood Floors*, 8 F.3d at 1105–08 (arbitrator award reinstating employee upheld where agreement's list of reasons for which employee may be discharged required that employer consider appropriate mitigating or aggravating factors, and because discharge did not meet agreement's "just cause" provision).

These cases also are distinct from cases such as *Trailmobile*, in which the unincorporated work rule recommended discharge, and

from cases such as *First Nat'l Supermarkets* and the present case, in which the unincorporated work rule mandated discharge.

For more examples of collective bargaining agreements giving employers the right to discharge for specified violations, without arbitrator review, *see Warrior & Gulf Navigation Co. v. United Steelworkers of America*, 996 F.2d 279, 281 (11th Cir.1993) (agreement provided employees who twice tested positive for drug use were subject to "immediate discharge"; court found arbitrator did not have authority to review remedy); *Delta Queen Steamboat Co. v. District 2 Marine Engineers Beneficial Ass'n, AFL–CIO*, 889 F.2d 599, 600 (5th Cir.1989) (agreement stated insubordination or carelessness constituted "proper cause" for discharge; court found arbitrator could not review remedy); *see also Sysco*, 838 F.2d at 796 (agreement expressly incorporated employer's rules into "just cause" provision by giving employer right to establish rules calling for immediate dismissal).

does not equal per se just cause for termination where the contract does not include explicit language incorporating the rule.

The Company's argument that insubordination constituted per se just cause to fire Cabell is, essentially, an argument that this court should adopt the holding in *Mountaineer Gas v. Oil, Chemical & Atomic Workers*, 76 F.3d 606, 610 (4th Cir.1996). *Mountaineer Gas* held work rules promulgated under a management rights clause in a collective bargaining agreement have the force of contract language, finding: "[t]he words 'proper cause' of the [collective bargaining agreement] cannot be used as a loophole through which the arbitrator bypasses the Drug Policy's mandatory language to implement his own brand of industrial justice."

The Fourth Circuit's decision in *Mountaineer Gas* has not been applied in the Sixth Circuit. *See Fed. Packaging*, 940 F.Supp. at 1160 (declining to apply *Mountaineer Gas* because "it is not this Court's function to question what it understands to be the clear precedent of the circuit in which it sits"). *Mountaineer Gas* is disfavored in other circuits as well. *See, e.g., Trailmobile*, 223 F.3d at 747 (declining to apply *Mountaineer Gas* ); *King Soopers*, 222 F.3d at 1228 (same); *First Nat'l Supermarkets*, 118 F.3d at 897 (same). I also will not apply *Mountaineer Gas*.

If Toledo Blank wanted the right summarily to fire employees for certain violations, it could have bargained for that right in the collective bargaining agreement. *See First Nat'l Supermarkets*, 118 F.3d at 896 ("If [employer] wished to have an unquestionable right to discharge an employee for any specified conduct, it needed to negotiate for recognition of that right"); *King Soopers*, 222 F.3d at 1228–29 (same).

## CONCLUSION

The collective bargaining agreement in this case did not define "just cause." The agreement also did not explicitly bar the Arbitrator from reviewing penalties for violating the work rules, or expressly incorporate the work rules into the agreement itself. Consequently, the Arbitrator had the authority to reconcile the ambiguous provisions of the collective bargaining agreement and the work rules, and formulated an award drawn from the essence of the agreement. The award must be enforced.

It is, therefore,

**ORDERED THAT**

1. Defendant's motion for summary judgment be, and hereby is, granted.

2. Plaintiff's motion for summary judgment be, and hereby is, denied.

**So ordered.**