# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3955

_____

| | | |
|---|---|---|
| The Star Tribune Company, | * | |
| | * | |
| Plaintiff-Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District |
| | * | of Minnesota. |
| Minnesota Newspaper Guild | * | |
| Typographical Union, | * | |
| | * | |
| Defendant-Appellee. | * | |

_____

Submitted: May 17, 2006
Filed: June 12, 2006

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

The Star Tribune Company (Tribune) and the Minnesota Newspaper Guild Typographical Union (Guild) are parties to a collective bargaining agreement (CBA) which covers employees in the news and editorial departments of the Tribune's Minneapolis newspaper and identifies the type of work reserved for union members. In January 2005 the Guild filed a grievance alleging that the Tribune had breached the CBA by publishing expert freelance articles in a section of the paper reserved solely for the work of union members. The Tribune denied the grievance, and an arbitrator

ruled in the Guild's favor. The Tribune brought this action to vacate the award, but the district court[1] confirmed it and the Tribune appeals. We affirm.

The Guild is the authorized bargaining representative for employees in the news and editorial departments (covered employees) of the Tribune. The Guild and the Tribune entered into a CBA in October 2003 which is effective through July 2008. The preamble of the CBA describes the work jurisdiction of the union as "all work presently being performed for [the Tribune's newspaper] by the [covered] employees" and requires such work "be assigned to employees within the Guild's jurisdiction." It also states that it is "the intent of the Parties that [provisions of the CBA] shall not alter the jurisdiction of the [Union] as established by present practice." Article 24 of the CBA allows the Tribune to employ freelance writers for ten categories of material, including materials "produced by experts or specialists whose principal support or reputation is derived from other than regular newspaper employment."

Over the past fourteen years Paul Douglas, a well known broadcast meteorologist, has written a daily weather column for the Tribune which has been published on the back page of Section B (the weather page). In 2004 the Tribune published five additional pieces by Douglas elsewhere in Sections A and B (collectively known as the news section) of the newspaper. The Guild filed a grievance claiming that the publication of these pieces in the news section, other than on the weather page, violated the terms of the CBA. The Tribune denied the grievance citing Article 24, and the claim went to arbitration.

At arbitration, the Guild contended that the Tribune had violated the jurisdictional language of the preamble to the CBA. The Tribune responded that publication of the Douglas articles was consistent with Article 24 of the agreement. Arbitrator James Lundberg ruled that the Tribune had violated the terms of the CBA

_____

[1] The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

by publishing the five Douglas articles. The arbitrator found that although the Tribune had published more than 4,000 articles by freelance experts over the last fourteen years, none except the five by Douglas had appeared in the news section of the paper. He determined that the past practice of the parties indicates that the jurisdictional language of the preamble was meant to prohibit the publication of freelance expert pieces in the news section of the paper, except on the weather page.

The Tribune asked the district court to vacate the arbitration award on the ground that it contradicted the plain language of the CBA, and the Guild moved to confirm. The district court denied the Tribune's motion and confirmed the award. It ruled that under the CBA the arbitrator was required to consider the Article 24 provisions about the publication of freelance articles in the context of the entire agreement, including the preamble. The court further held that the arbitrator properly sought to reconcile Article 24 with the jurisdictional language of the preamble by determining what the "present practice" of the parties had been with respect to freelance articles, that he appropriately looked to extrinsic evidence to make his determination, and that the award drew its essence from the CBA.

The Tribune appeals, urging that the arbitration award be set aside. It complains that the award conflicts with and nullifies Article 24 of the CBA. The Tribune argues that the plain language of Article 24 permitted publication of the freelance articles in question, that there is no conflict between the preamble and Article 24, that the award effectively created a location clause limiting the placement of freelance articles to certain portions of the newspaper, and that the parties had never intended that meaning. It claims that the award is therefore unenforceable and should be vacated.

Although we review the decision of the district court confirming the arbitration award de novo, First Options v. Kaplan, 514 U.S. 938, 947-48 (1995), judicial review of an arbitration award is more limited. So long as the arbitrator is "even arguably

construing or applying the contract and acting within the scope of his authority," we will not disturb the decision even if we are convinced that he committed serious error. United Paperworkers Int'l v. Misco, 484 U.S. 29, 38 (1987); see also Midwest Coca-Cola Bottling Co. v. Allied Sales Drivers, 89 F.3d 514, 517 (8th Cir. 1996). We will only vacate an award if the arbitrator ignored or disregarded the plain language of an unambiguous contract or nullified a provision of the contract. See Int'l Paper Co. v. United Paperworkers Int'l Union, 215 F.3d 815, 817 (8th Cir. 2000); Dobbs, Inc. v. Local No. 614, Int'l Bd. of Teamsters, 813 F.2d 85, 86 (8th Cir. 1987).

Article 24 of the CBA permits the Tribune to employ expert freelance writers in certain circumstances, but it does not address the section of the newspaper in which these works are to be published. The Douglas articles appear to fall within the language of this provision, but Article 24 cannot be considered in isolation for it must be read in the context of the entire agreement, including the preamble. Sheet Metal Workers Int'l Ass'n v. Lozier Corp., 255 F.3d 549, 551 (8th Cir. 1991). The preamble defines the Guild's jurisdiction by reference to "present practice." In order to reconcile the jurisdictional language in the preamble and Article 24, the arbitrator had to determine what the present practice of the parties had been regarding the publication of freelance writers.

The CBA did not define present practice, and the arbitrator therefore had to look at extrinsic evidence to inform his interpretation, including an examination of the past practice of the parties to the agreement. See Minneapolis-St. Paul Mailers Union, Local No. 4 v. Northwest Publ'n, Inc., 379 F.3d 502, 510 (8th Cir. 2004); Iowa Beef Processors, Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am., AFL-CIO, 627 F.2d 853, 857 (8th Cir. 1980). The evidence submitted to the arbitrator showed that the Tribune had published more than 4,000 expert freelance articles on the weather page of section B, but that prior to the publication of these five articles by Paul Douglas, the Tribune had never published a freelance expert article in any other portion of the news section of the paper. The arbitrator's conclusion, that

the placement of these articles elsewhere in the news section of the paper was inconsistent with the "present practice" of the parties and thus not permissible, was a reasonable interpretation of the CBA.

The Tribune relies heavily upon Northwest Airlines, Inc. v. Int'l Ass'n of Machinists, Dist. Lodge No. 143, 894 F.2d 998 (8th Cir. 1990), to support its proposition that the award must be vacated because the arbitrator ignored the plain language of the CBA. Northwest is distinguishable from this case, however. The arbitrator in that case was interpreting a settlement agreement, not a CBA. See United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578 (1960) (noting that a CBA "is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate"). Moreover, the provision at issue in Northwest was clear on its face, it was not made ambiguous when read in the context of the entire agreement, and it did not require harmonization with other provisions. Finally, the arbitrator was not called on to consider the past practices of the parties in that case, whereas such reference is explicitly contemplated by the preamble here. See Franklin Elec. Co. v. Int'l Union, United Auto. Aerospace & Agric. Workers of Am., 886 F.2d 188, 193 (8th Cir. 1989) (upholding arbitrator's use of past practice where contemplated by the CBA). We conclude that Northwest is inapposite to the matter before the court.

Also unpersuasive is the Tribune's argument that the arbitration award nullifies Article 24 and creates a location clause not contemplated by the parties. The award does not nullify Article 24, but merely requires the Tribune to publish expert freelance articles in a manner consistent with the terms of the preamble. Similarly, the arbitrator was acting within his authority in deciding that the CBA reveals that the parties intended no other provision of the CBA to conflict with the jurisdictional provision in the plain and unambiguous language of the preamble. Had the Tribune wished to alter the work jurisdiction of the Guild, it could have sought to do so through the use of more specific and limiting language in the CBA. In the absence of such language

we conclude that the arbitrator's award neither nullified Article 24 nor created a location clause in the CBA.

Although the Tribune argues that the award ignores the plain language of the CBA, its appeal is based entirely on the issue of whether the arbitrator properly interpreted the CBA. The majority of its argument is spent advancing one interpretation of the CBA and the Guild responds in kind, advancing a different interpretation, which is the one adopted by the arbitrator. Even if we were inclined to agree with the Tribune's interpretation, the parties reserved interpretation of their contract for arbitration. In the context of labor disputes "the question of interpretation of the collective bargaining agreement is [one] for the arbitrator." United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 599 (1960). By agreeing to arbitrate any dispute, both the Tribune and the Guild agreed to accept the arbitrator's view of the facts and interpretation of the CBA so long as his interpretation draws its essence from their agreement. Id. at 597. The award in question here meets that criteria.

For these reasons, we affirm the order of the district court confirming the arbitration award.

————————————————————