**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 29, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LB&B ASSOCIATES, INC.,

      Plaintiff - Counter-Defendant -
      Appellant,

v.

INTERNATIONAL BROTHERHOOD
OF ELECTRICAL WORKERS,
LOCAL NO. 113,

      Defendant - Counter-Claimant -
      Appellee.

No. 05-1110

---

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 02-F-0093 (BNB))**

---

Jennifer M. Miller (Benjamin N. Thompson, with her on the briefs), Wyrick
Robbins Yates & Ponton LLP, Raleigh, NC, for Plaintiff - Appellant.

Terrence A. Johnson, Colorado Springs, CO, for Defendant - Appellee.

---

Before **O'BRIEN**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    "The function of the court is very limited when the parties have agreed to

submit all questions of contract interpretation to the arbitrator." <u>United</u>

Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36-37 (1987) (quotation omitted).  With this admonition in mind, we consider the present dispute.  Plaintiff-Appellant LB&B Associates, Inc. ("LB&B") appeals from a district court order refusing to vacate an arbitrator's award in favor of an employee and member of Defendant-Appellee International Brotherhood of Electrical Workers, Local No. 113 ("Local 113").  As the arbitrator's decision draws its essence from the collective bargaining agreement and is not contrary to the agreement's express language, we AFFIRM.

## BACKGROUND

LB&B, a government services contractor that provides operation and maintenance services to the United States Army at Fort Carson, Colorado, and Local 113, the collective bargaining representative for LB&B's employees, entered into a collective bargaining agreement ("CBA") in late 1999.  The CBA contains two provisions specifically relevant to this appeal:

ARTICLE 3: MANAGEMENT RIGHTS

. . . .

Except as hereinafter provided, it is agreed by both parties to this Agreement that . . . the right to hire, promote, demote, transfer, suspend *or discharge employees for just cause* . . . is vested exclusively in [LB&B], subject to the specific provisions of the Agreement. Furthermore, disciplinary actions shall be in accordance with [LB&B's] established policies and procedures. [LB&B's] policies shall take precedence to the extent that they are not in conflict with any provision of this Agreement.

. . . .

ARTICLE 6: NON-DISCRIMINATION

. . . .

Any employee engaging in sexual harassment . . . *may be subject to immediate discharge.*

(Emphases added). The CBA also provides that any grievance may be submitted to arbitration, and that the arbitrator "shall have jurisdiction and authority to interpret and apply" the CBA, but may not "add to, change, or modify any of the [CBA's] terms."

In February 2001, Donald Dukart, a union member, was terminated by LB&B for making sexually harassing comments to a female employee. At Local 113's request, Dukart's discharge was submitted to arbitration. LB&B and Local 113 stipulated that the issues for arbitration were: (1) was Dukart's termination for "just cause" and (2) if not, what was the appropriate remedy? After a hearing, the arbitrator issued his award, finding that Dukart had engaged in sexually harassing conduct but that termination was not warranted. Specifically, the arbitrator found that LB&B's policies "are uncertain in their notice to employees as to the scope of discipline for misconduct"; that, to the extent that the policies conflicted with the CBA's "just cause" for termination standard, the CBA took precedence; and that "just cause" for termination did not exist because of Dukart's positive work record and potential for rehabilitation. After concluding

that Dukart's "sexually harassing conduct is not condoned and justifies discipline but not discharge," the arbitrator ordered Dukart reinstated with back pay, but also ordered him to apologize to the female employee and personally pay for sexual harassment training. Finally, pursuant to the CBA's provision that the costs of arbitration be borne by the "losing party," the arbitrator assessed costs to LB&B.

LB&B then filed a complaint in the district court seeking to vacate the arbitrator's award. Agreeing that no material facts were in dispute, LB&B and Local 113 filed cross-motions for summary judgment; the district court ruled in favor of Local 113, finding the award within the power of the arbitrator and consistent with the CBA. After the district court entered a final judgment in the matter, LB&B timely appealed.

## DISCUSSION

"[W]e review the district court's grant of summary judgment *de novo*, applying the same standard used by the district court." Johnson v. Riddle, 443 F.3d 723, 724 (10th Cir. 2006).

Because "[t]he parties have contracted for an arbitrator to resolve their disputes, not a court," our standard of review of an arbitrator's award is "among the narrowest known to the law." Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc., 222 F.3d 1223, 1226 (10th Cir. 2000) (quotations omitted). Thus "[w]hether the arbitrator's reading of the agreement

was strained or even seriously flawed . . . is irrelevant." Bruce Hardwood Floors v. S. Council of Indus. Workers, 8 F.3d 1104, 1108 (6th Cir. 1993). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." Misco, 484 U.S. at 38.

However, an arbitrator's discretion, though entitled to "profound deference," Bruce Hardwood Floors, 8 F.3d at 1107, is not unlimited. An arbitrator "does not sit to dispense his own brand of industrial justice" and "his award is legitimate only so long as it draws its essence from the collective bargaining agreement." Local No. 7, 222 F.3d at 1227 (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

> [A]n award does not draw its essence from the [collective bargaining agreement] if
>
>> it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without factual support.

Id. (quoting Mistletoe Express Serv. v. Motor Expressmen's Union, 566 F.2d 692, 694 (10th Cir. 1977)) (alterations omitted).

LB&B argues that the arbitrator's award in this case is contrary to the express language of the CBA. Specifically, LB&B points to Article 6's "immediate discharge" provision. Were this the only provision in the CBA

relating to termination, we might agree with LB&B's claim. However, Article 6 is not the CBA's sole termination provision; Article 3 provides that LB&B may "discharge employees for just cause." LB&B essentially contends that Article 6 provides an example of "just cause" for which termination is permitted—that is, *any* sexual harassment is just cause for termination. That is certainly one interpretation. However, it is not the only interpretation. The arbitrator read the provisions differently, concluding instead that "Article 6 . . . vests discretion in the issuance of discipline for sexual harassment and Article 3 . . . subjects *any* discharge to the just cause standard for adjudication and review" (emphasis added). In other words, a sexually harassing employee *may be* subject to discharge *if* just cause for discharge exists, or, stated differently, a sexually harassing employee is vulnerable to being discharged because of the serious nature of the offense, but the ultimate act of discharge must still satisfy the "just cause" criterion of Article 3. This interpretation is also a plausible reconciliation of the two provisions.[1] Whether it is the best interpretation is irrelevant; the

---

[1] We note that at least one portion of the CBA specifically defines certain misconduct as "cause" for termination. Article 13, which deals with worker safety, provides, in relevant part:

The Company will properly train employees regarding safety practices and procedures. Any employee who disregards normal safety precautions on the worksite of the premises of the Company is subject to dismissal. Employees involved in an accident will be tested for drugs and alcohol. *Positive testing or failure to work safely is cause for immediate discharge*.

(continued...)

arbitrator at least "arguably constru[ed]" the CBA, <u>Misco</u>, 484 U.S. at 38; thus, his decision must stand.[2]

We recognize that in cases construing similar, though not identical, bargaining agreements, some courts have found that the violation of a specific provision authorizing discharge is *de facto* "just cause" for termination such that an arbitrator's award reinstating an employee cannot stand. For example, in <u>Warrior & Gulf Navigation Co. v. United Steelworkers of America</u>, 996 F.2d 279

---

[1](...continued)

(Emphasis added). That another provision of the CBA specifically defines "cause" bolsters the arbitrator's conclusion that a violation of Article 6—which provides only that sexually harassing employees "may be subject" to discharge—is not *de facto* just cause for termination.

[2] LB&B also contends that this court's decision in <u>Mistletoe Express</u> should control the outcome of the present case. In <u>Mistletoe Express</u>, we affirmed the district court's vacatur of an arbitrator's award reinstating an employee who was fired for failing to settle various bills. 566 F.2d at 693-94. There, as here, the arbitrator concluded that the company had not shown "just cause" for termination. <u>Id.</u> at 694. There, as here, the CBA contained a provision stating that employees could be discharged "for just cause" and another provision specifically describing the offense for which the employee was terminated. <u>Id.</u> However, one critical difference separates this case from <u>Mistletoe Express</u>—there, the CBA *expressly* provided that employees could be terminated for just cause, "*among which just causes are* . . . [f]ailure to settle bills and funds collected for the company within twenty-four (24) hours." <u>Id.</u> (emphasis added); <u>see also</u> <u>Local No. 7</u>, 222 F.3d at 1229 ("<u>Mistletoe Express</u> . . . involved [a] situation[] in which the agreement[] at issue *expressly* provided for certain conduct as just cause for discharge, and the arbitrator[] substituted [his] own views for express language in the collective bargaining agreement[].") (emphasis added). The CBA in the present case lacks this express link—it nowhere provides that sexual harassment is "among [the] just causes" for termination. Thus, the arbitrator's agreement cannot be said to be contrary to the *express* language of the CBA.

(11th Cir. 1993), on which LB&B relies, the Eleventh Circuit found that an arbitrator's similar interpretation of an analogous CBA "contradicted the express language of the Agreement." Id. at 279. There, the CBA contained a provision that the court interpreted to require "just cause" to terminate an employee.[3] Id. at 280. In a separate section, the CBA also provided that an employee who failed two drug tests was "subject to immediate discharge." Id. at 280 & nn.2, 4. The arbitrator determined that just cause for termination did not exist by the mere fact that an employee had twice failed a drug test, but the court disagreed, ruling that "[b]ecause the [CBA] expressly addresses the particular contingency of a second positive drug test, we conclude that the [CBA's] 'just cause' standard is consistent with this explicit provision" and that, "as a matter of law[, the company] had 'just cause' to fire [the employee]." Id. at 281.

On the other hand, other courts have deferred to the arbitrator's interpretation of similar contract provisions. In Arco-Polymers, Inc. v. Local 8-74, 671 F.2d 752 (3d Cir. 1982), the Third Circuit reversed a district court decision vacating an arbitrator's award reinstating an employee who, the arbitrator found, was fired without just cause. Id. at 753-54. There, the CBA contained one provision that "[e]mployees absent from work without good and sufficient cause for more than four (4) consecutive days shall be subject to

---

[3] The CBA specifically provided that "the right to hire, suspend *or discharge for proper cause* . . . is vested exclusively in the Company." Warrior & Gulf, 996 F.2d at 280 n.5.

discharge," and a separate provision that "[e]mployees shall be discharged only for just cause." Id. at 752-53. In framing the issue, the court stated that "[i]f the arbitrator's award can possibly derive from an interpretation and application of the clauses of the agreement, the courts are precluded from refusing to enforce his award." Id. at 755. Although the arbitrator's decision was not clear, the court concluded that

> the arbitrator might have found that all discharges are subject to the "just cause" provision . . . . Thus, it would not necessarily have been inconsistent for the arbitrator to have found that [the employee] had no "good and sufficient cause" for his absences but that the Company had no "just cause" to discharge him. *Such an interpretation would certainly not manifestly disregard the language of the agreement or lack support from principles of contract construction.* The arbitrator's award may represent an implicit resolution of an inherent tension between [the provisions]. Certainly it was his obligation to resolve any conflicts in construction.
>     If the arbitrator had explicitly set forth this analysis of the relationship between [the provisions], *we could not say that he was modifying the agreement or exceeding the authority granted to him by the parties.*

Id. at 756 (emphases added). Concluding that "[t]he fact that the arbitrator wrote an opinion, albeit one that might be viewed as confusing and subject to various interpretations, should not cause the award to be vacated," the court found that the award "draw[s] its essence from the contract." Id. at 756-57.

And in Bruce Hardwood Floors, the Sixth Circuit also reversed a district court vacatur of an arbitrator's award. There, the CBA provided (1) that the

company had the right to discharge employees for "just cause"[4]; (2) that the company, in disciplining or discharging employees, should consider mitigating or aggravating circumstances and apply any discipline "in a fair and equal manner to all offenders"; and (3) that sleeping on duty is a reason for which an employee "may be discharged immediately." 8 F.3d at 1105. In vacating the arbitrator's award reinstating an employee who had been sleeping on duty, the district court reasoned that the CBA "establishe[d] two independent grounds for dismissal: 1) just cause and 2) a list of offenses . . . for which immediate discharge is appropriate. As [the employee's] sleeping on duty is one of these listed offenses, . . . [her] actions constituted *per se* just cause." Id. at 1107. The Sixth Circuit disagreed:

> [The CBA] states only that an employee "may" be discharged for committing the enumerated offenses. Moreover, section 1 vests the Company with the right "to discipline and discharge employees for just cause." . . . We find that these clauses, which provide for potential alternative remedies, coupled with the directive in section 2 that the company take into consideration "appropriate mitigating or aggravating circumstances" in applying formal discipline, created sufficient basis for the arbitrator to conclude that he had the authority to review the penalty imposed. The arbitrator's award thus was rationally derived from the terms of the agreement and not simply based on general considerations of fairness and equity. The award, moreover, did not conflict with the express terms of the agreement, and did not impose additional requirements not expressly provided in the agreement. *Whether the arbitrator's reading of the agreement was strained or even*

---

[4] Article I of the CBA provided that "the Company retains the exclusive right to discharge employees for 'just cause," and Article XXVI, Section 1 reiterated that the Company "has the right to discipline and discharge employees for just cause." Bruce Hardwood Floors, 8 F.3d at 1105.

- 10 -

*seriously flawed, and whether the district court's* per se *just cause analysis is more plausible, is irrelevant. The arbitrator arguably construed and applied the agreement, and this is precisely what the parties bargained for him to do.*

Id. at 1108 (citations & original emphasis omitted, emphasis added).

We come down on the side of the Third and Sixth Circuits. When an agreement includes a "just cause" termination provision and does not *explicitly* provide that an enumerated offense is such cause, the "profound deference" owed to an arbitrator's decision, coupled with the fact that the parties have bargained for the arbitrator, not the courts, to decide their dispute, compels affirmance of an arbitrator's interpretation requiring both the enumerated offense and circumstances amounting to just cause in order to justify termination.[5]

**CONCLUSION**

For the foregoing reasons, the decision of the district court is AFFIRMED.

---

[5] LB&B also asks this court to reverse the district court's ruling that, pursuant to the CBA's provision that the losing party shall pay the costs of arbitration, LB&B was responsible for those costs. Specifically, LB&B argues that "if this Court vacates [the arbitrator's] Award, LB&B is entitled to a declaratory judgment that the Union must reimburse LB&B the . . . arbitration expenses that have been paid." As we uphold the award, we also uphold the district court's decision that LB&B is responsible for the costs.

05-1110, *LB&B Associates, Inc. v. International Brotherhood of Electrical Workers,*

**TYMKOVICH**, Circuit Judge, dissenting.

I am convinced the arbitrator's award is contrary to the express terms of the CBA. It is well settled, of course, that an arbitrator's decision in the interpretation of a collective bargaining agreement is entitled to deference where it "draws its essence from the collective bargaining agreement." *Mistletoe Express Serv. v. Motor Expressmen's Union*, 566 F.2d 692, 694 (10th Cir. 1977). But no deference is required when the decision is "contrary to the express language of the contract." *Id.*

Here, the arbitrator's award is contrary to the express language of the CBA. Article 6, Section 2 of the CBA provides that "[a]ny employee engaging in sexual harassment . . . may be subject to immediate discharge." Sexual harassment is plainly grounds for discharge, and the CBA specifically vests with the employer the discretion to terminate for this kind of behavior. That fact that the CBA uses the phrase "may be subject to" rather than the word "cause" creates no interpretive difficulties. The agreement is clear: an employee may be fired for sexual harassment. To find that Dukart engaged in sexual harassment yet could not be terminated at LB&B's discretion rewrites the manifest intent of the CBA to allow LB&B the power to terminate for harassment. While our review is "among the narrowest known to the law," *Local No. 7 UFCW v. King Soopers, Inc.*, 222 F.3d 1223, 1226 (10th Cir. 2000), in this case the arbitrator stepped outside the

agreement between the parties to "dispense his own brand of industrial justice."

*Id.* at 1227.

Accordingly, I would reverse the decision below.