FILED
United States Court of Appeals
Tenth Circuit

June 3, 2010

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

CP KELCO US, INC.,

       Plaintiff-Appellee,

v.

INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL
NO. 627, AFL-CIO,

       Defendant-Appellant.

No. 09-7041
(D.C. No. 6:08-CV-00068-SPS)
(E.D. Okla.)

---

### ORDER AND JUDGMENT[*]

---

Before **MURPHY**, **HOLMES**, Circuit Judges, and **ARMIJO**,[**] District Judge.

---

This is an appeal from the district court's grant of summary judgment in

favor of Plaintiff-Appellee CP Kelco US, Inc. ("CP Kelco").  CP Kelco brought

this action under the National Labor Relations Act, 29 U.S.C. §§ 151–169

("NLRA"), in an attempt to set aside an arbitrator's award in favor of Defendant-

Appellant International Union of Operating Engineers, Local No. 627, AFL-CIO

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Federal Rule of Appellate
Procedure 32.1 and 10th Circuit Rule 32.1.

[**]The Honorable M. Christina Armijo, District Judge, United States District
Court for the District of New Mexico, sitting by designation.

("the Union"). The arbitrator had determined that CP Kelco had violated the terms of a collective bargaining agreement ("CBA") between the Union and CP Kelco. The district court held that the arbitrator's decision did not draw its essence from the CBA and that the arbitrator had exceeded his authority under the CBA. The court therefore vacated the arbitrator's decision and granted summary judgment in favor of CP Kelco. Exercising jurisdiction under 28 U.S.C. § 1291, we **AFFIRM**.

## I. Factual Background

CP Kelco operates a plant in Okmulgee, Oklahoma that manufactures xanthan gum and welan gum for use in the food, oil, and printing industries. The plant operates twenty-four hours a day. The Union represents nearly 100 employees at the plant, including the maintenance mechanics. From December 1, 2002 to November 30, 2007, CP Kelco and the Union were parties to a CBA. This dispute began when CP Kelco notified the Union of a new maintenance department call-in policy ("2007 Call-In Policy") on January 5, 2007. The 2007 Call-In Policy required all maintenance department day mechanics to wear pagers outside of their normal working hours on a rotating basis. "'Failure to respond to a page [would] be considered insubordination and [could] result in a written warning, (second step progressive discipline).'" Aplt. App. at 22 (Arbitration Decision, dated Dec. 18, 2007) (quoting 2007 Call-In Policy); *see id*. at 171 (2007 Call-In Policy, filed Mar. 21, 2008). The on-call mechanics were required to call

back within thirty minutes of receiving a page and then to "proceed to the plant within a reasonable time." *Id.* at 22, 171.

The Union filed a grievance under the CBA alleging that CP Kelco's implementation of the 2007 Call-In Policy violated the CBA.[1] An arbitrator heard the grievance and issued a decision that made various factual findings and conclusions. Both parties presented the issue to the arbitrator slightly differently, and he ultimately framed the issue as: "Did the Company violate the CBA by its unilateral implementation of the 2007 Maintenance Department Call-In Policy effective January 16, 2007? If so, what is the appropriate remedy?"[2] *Id.* at 34.

_____

[1] In a January 17, 2009 grievance letter to CP Kelco's Human Resources Manager, the Union stated:

> This is to notify the Company that the maintenance mechanics do not agree with the Company's decision to require them to participate, effective January 15, 2007, in a rotation of wearing pagers outside their normal work hours.
>
> We also believe the company has violated Article IX, Management Rights, Paragraph D and Article XXII Hours of Work and Compensation, Call Back Pay and any other articles in the Collective Bargaining Agreement that may apply.
>
> In order to remedy this improper action by the company we request the company rescind the pager policy, and we request that each employee required to wear a pager be paid a fair compensation for the time required.

Aplt. App. at 21 (quoting Joint Grievance Letter) (internal quotation marks omitted); *see id.* at 169 (Joint Grievance Letter, filed Apr. 21, 2008).

[2] In its January 5, 2007 notification to the Union, CP Kelco explained

(continued...)

-3-

In his decision, the arbitrator found that the following CBA provisions were applicable to this dispute:  Article IV, Union Management Cooperation; Article IX, Management Rights; Article XIII, Grievance and Arbitration Procedure; and Article XXII, Hours of Work and Compensation.  Under the CBA's Management Rights Article, CP Kelco

> retain[ed] all rights of Management it had prior to the certification of the Union, including, . . . the right to:
>
> . . .
>
> C. *establish and to enforce* standards of production, *policies*, regulations and safety rules *not inconsistent with this Agreement*;
>
> D. *establish and to alter from time to time reasonable work and shop rules and regulations to be observed and complied with by employees*, which rules shall not be inconsistent with the provisions of this Agreement.  The Union shall be advised of such rules and regulations . . . .

*Id.* at 24 (emphasis added) (internal quotation marks omitted); *see id*. at 45–46 (CBA, filed Apr. 21, 2008).  The CBA's Grievance and Arbitration Procedure states in relevant part:

> The arbitration hearing shall be held as promptly as possible and the arbitration award shall be final and binding upon all

---

(...continued)
that the 2007 Call-In Policy would become effective on January 15, 2007; however, due to a holiday, the arbitrator found that the policy did not actually come into effect until the next day, January 16, 2007.  Aplt. App. at 21, 28, 34.  Adding to the confusion, in his decision, the arbitrator sometimes identified January 17, 2007 as the effective date.  *See id*. at 22, 28.  This difference ultimately is inconsequential.

-4-

parties, *provided it does not exceed the authority of the arbitrator. The arbitrator's authority shall be limited to the application of this Agreement, and he/she shall have no authority to render an award which amends, alters, or modifies any provision of this Agreement.*

*Id.* at 24 (emphasis added) (internal quotation marks omitted); *see id.* at 50. The CBA's Hours of Work and Compensation Article addressing call-in pay provides in relevant part:

> *Occasionally*, hourly personnel *may be asked* to return to work after they have left the premises for the day. Once on site, he/she may be required to perform more than one job, however, *pay will be based solely on the total number of hours worked. If an employee is called in, he/she will be guaranteed a minimum of four (4) hours pay 1X his/her base rate.*

*Id.* at 25 (emphasis added) (internal quotation marks omitted); *see id.* at 60.

The arbitrator found that "[a]t the time the CBA became effective the Company had a call in policy which consisted of calling mechanics when needed on a rotational basis" starting with the mechanic who had the lowest hours. *Id.* at 26. Under this system, mechanics could decline to return and there was no discipline for not responding. However, the arbitrator found that in 2003, out of a desire to improve the call-in response, the Plant Engineer instituted a new policy so that the plant could have better maintenance coverage of break-downs at the plant. This new policy ("2003 Call-In Policy") increased pay for certain hours to "2X," liberalized hours of work for mechanics who had to report during certain hours, and allowed for the payment of one-half the mechanic's hourly rate for

-5-

travel time when he/she responded to a call in a timely manner. *Id.* The document outlining these new procedures explained that CP Kelco was "applying this policy on a non-precedent setting basis" and it "w[ould] be reviewed as warranted by the Union/Management Committee." *Id.*

Despite the institution of the 2003 Call-In Policy, the arbitrator found that, in late 2005, the new Plant Engineer believed that the mechanics' response to call-ins was not what it should be and that they had responded inadequately to two fires at the plant in December 2005. The Plant Engineer also noted that only two mechanics were taking a majority of the call-ins under the voluntary system and he was concerned that there could be break-downs to which no one would respond.

In response to these perceived deficiencies, the Plant Engineer asked the Team Leader to meet with the Union to discuss these problems and to work out a "'win-win' solution to improve call-in responses." *Id.* at 27. The arbitrator found that the Team Leader and the Plant Engineer had discussions during 2006 with one of the union stewards concerning a new call-in policy and sought input from the mechanics. However, several meetings with the mechanics revealed that there was "little interest" among them in revising the call-in policy. *Id.* Nonetheless, the Union offered a proposal to the Plant Engineer in August 2006 and the Plant Engineer indicated that he would have to take the proposal to the Human Resources Manager. The Human Resources Manager, in either late November or

early December 2006, told the Union Steward that the proposal was "a no-go" because CP Kelco would not guarantee six hours of pay when a mechanic was called in because that would exceed the amount of pay allowed for in the CBA's Hours of Work and Compensation Article addressing call-back pay. *Id*. (internal quotation marks omitted). The Plant Engineer then published the 2007 Call-In Policy, distributing it to the mechanics on January 5, 2007, and faxing it to the Union office. As it was being distributed to the mechanics, one mechanic asked if they would be receiving pay for carrying the pager outside of work hours and the Plant Engineer said "no." *Id*. at 28 (internal quotation marks omitted).

The arbitrator found that there was "nothing in the CBA which specifically addresses 'call-in policy' procedures." *Id*. at 35. He further found that while the 2003 Call-In Policy had been implemented without Union agreement, it had been followed by the parties for four years without complaint, creating a "past practice" that could not be changed unilaterally. *Id*. at 35. He also found that the parties had "engaged in 'bargaining'" over the 2003 Call-In Policy, but not over the 2007 Call-In Policy. *Id*. at 36. He determined that "the language of Article IX [Management Rights] does not provide the Company with the coverage it seeks in defending its position on the 2007 Call-In Policy." *Id*. at 35. Finally, the arbitrator concluded that "the Company unilaterally implemented the 2007 Call-In Policy in violation of its duty to bargain to revise its past practice. This, in

general, would be a violation of the Management Rights Article of the CBA." *Id.* at 36.

In fashioning a remedy, the arbitrator suspended the 2007 Call-In Policy and ordered the parties to follow the 2003 Call-In Policy, "subject to the parties returning to the bargaining table to negotiate" any further changes. *Id*. at 37. He also ordered CP Kelco to pay any employees who had been "'paged'" and "'reported for duty'" under the 2007 Call-In Policy "as if 'on the clock' from the time the page was received until they reported for duty." *Id*. The arbitrator ordered that "[t]his payment would be in addition to the contract provisions that would be applicable for work performed thereafter." *Id*.

Following the arbitrator's decision, CP Kelco brought suit in the United States District Court for the Eastern District of Oklahoma in an effort to vacate the award, arguing that the arbitrator exceeded his authority under the CBA and that his decision did not draw its essence from the CBA. In response, the Union filed a motion to dismiss CP Kelco's complaint in which it argued that courts are not authorized to review the merits of labor-arbitration decisions. CP Kelco responded that judicial review of arbitration decisions, while narrow, is permitted and proper under federal law. Subsequently, CP Kelco moved for summary judgment. Instead of filing a response to the summary judgment motion addressing the arguments raised by CP Kelco, the Union filed a document styled, "Defendant's Motion to Summarily Dismiss Plaintiff's Motion for Summary

Judgment," in which the Union reiterated its arguments regarding the scope of judicial review of labor-arbitration decisions.

The district court decided to treat these pending motions as cross motions for summary judgment. The court granted CP Kelco's motion and denied the Union's motion. In its ruling, the district court acknowledged the narrow scope of the available judicial review. However, the district court also explained that, despite the Union's protests to the contrary, "an arbitrator's decision is not entirely beyond the reach of the courts" because "his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award." *Id.* at 11 (Op. & Order Granting Summ. J. in Favor of the Pl., filed Mar. 30, 2009) (internal quotation marks omitted). Under that limited review, the district court held that "[t]he Court is satisfied that the arbitrator's decision in this case *did not* draw its essence from the collective bargaining agreement between the parties." *Id*. at 13. Instead, the district court determined that the arbitration decision "drew its essence from the 2003 Call-In Policy, which the arbitrator found was an enforceable past practice that CP Kelco could not unilaterally alter or amend." *Id*. The court emphasized that the arbitrator was not using the 2003 Call-In Policy "as an aid to resolving ambiguity" in the CBA; instead, the arbitrator's decision "dr[ew] its essence from the 2003 Call-In Policy." *Id.* at 16, 17. The court therefore held that "the

-9-

arbitrator exceeded his authority under the collective bargaining agreement and rendered a decision inconsistent therewith." *Id*. at 17.  Consequently, the district court vacated the arbitrator's award and granted CP Kelco's summary judgment motion.  The Union timely filed this appeal.

## II.  Discussion

The district court found that the arbitrator did not draw the essence of its decision from the CBA.  Instead, the district court held that the arbitrator's decision drew its essence from the 2003 Call-In Policy, considering it to be an enforceable past practice that CP Kelco could not alter or amend unilaterally.  And the court reasoned that, by doing this, the arbitrator exceeded his authority and impermissibly altered a provision of the CBA, namely, the Management Rights Article.  The court therefore vacated the arbitrator's decision.  We agree with the district court's conclusions and affirm.

We review a district court's grant of summary judgment in labor-arbitration cases de novo. *Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc.*, 222 F.3d 1223, 1226 (10th Cir. 2000); *Kennecott Utah Copper Corp. v. Becker*, 195 F.3d 1201, 1204 (10th Cir. 1999).  However, as the district court acknowledged, judicial review of labor-arbitration awards is "among the narrowest known to the law." *Champion Boxed Beef Co. v. Local No. 7 United Food & Commercial Workers Int'l Union*, 24 F.3d 86, 87 (10th Cir. 1994)

-10-

(internal quotation marks omitted); *see also Becker*, 195 F.3d at 1204.  This

limited review is

> mandated by a strong Congressional policy of encouraging the
> peaceful resolution of labor disputes by means of binding
> arbitration . . . . [C]ourts decline to review the merits of
> arbitration awards so that both employers and unions can be
> confident in obtaining the decision of the arbitrator for which
> they have bargained.

*NCR Corp., E.M.-Wichita v. Int'l Assoc. of Machinists & Aerospace Workers*, 906

F.2d 1499, 1504 (10th Cir. 1990) (citation omitted) (internal quotation marks

omitted).  Under this narrow standard, "[t]he arbitrator's factual findings are

beyond review, and, so long as the arbitrator does not ignore the plain language of

the collective bargaining agreement, so is his interpretation of the contract."

*Champion Boxed Beef Co.*, 24 F.3d at 87.  An arbitrator's factual findings are

beyond review even if "an arbitrator's express factual finding[s] may have

ignored or contradicted some or even all of the evidence."  *Kennecott Utah

Copper Corp. v. Becker*, 186 F.3d 1261, 1269 (10th Cir. 1999).  "[E]ven 'serious

error' on the arbitrator's part does not justify overturning his decision, where . . .

he is construing a contract and acting within the scope of his authority."  *Major

League Baseball Players Ass'n. v. Garvey*, 532 U.S. 504, 510 (2001) (quoting

*United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)).  In

saying that the merits of the arbitrator's decision are not "open to review," we

have explained that "[t]he merits [not open to review] embrace not only asserted

errors in determining the credibility of witnesses, the weight to be given their testimony, and the determination of factual issues, but also the construction and application of the collective bargaining agreement." *Sterling Colo. Beef Co. v. United Food & Commercial Workers*, *Local Union No. 7*, 767 F.2d 718, 720 (10th Cir. 1985) (internal quotation marks omitted).

Despite these extensive limitations, the district court correctly noted that an arbitrator's decision is not wholly beyond the reach of judicial review. "[A]n arbitrator's discretion, though entitled to 'profound deference,' is not unlimited." *LB & B Assocs., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113*, 461 F.3d 1195, 1197 (10th Cir. 2006) (citation omitted). The Supreme Court has stated that

> an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). An award does not draw its essence from the collective bargaining agreement if

> it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its

-12-

> language, its context, and any other indicia of the parties'
> intention, it is without factual support.

*LB & B Assocs.*, 461 F.3d at 1197–98 (internal quotation marks omitted).

On appeal, CP Kelco convincingly argues that the arbitrator's decision conflicts with and improperly amends the CBA by considering and enforcing the 2003 Call-In Policy without first finding an aspect of the CBA to be ambiguous. Although an arbitrator may resolve ambiguities that the arbitrator finds in the collective bargaining agreement by considering extrinsic evidence like past practices or the "law of the shop," the arbitrator cannot use such evidence to alter or rewrite an unambiguous provision in the collective bargaining agreement. *See, e.g., Champion Boxed Beef Co.*, 24 F.3d at 88–89 ("It is a well-recognized principle that, except where expressly limited by a labor agreement, an arbitrator may consider and rely upon extrinsic evidence, including negotiating and contractual history of the parties, evidence of past practices, and the common law of the shop, when interpreting *ambiguous* provisions." (emphasis added)); *see also Star Tribune Co. v. Minn. Newspaper Guild Typographical Union*, 450 F.3d 345, 348 (8th Cir. 2006) (holding that an arbitration decision may be vacated "if the arbitrator ignored or disregarded the plain language of an unambiguous contract or nullified a provision of the contract"). Therefore, the arbitrator in this case could only rely upon the 2003 Call-In Policy as an interpretative aid if he first found some provision of the CBA to be ambiguous. He did not do so.

Rather, the arbitrator apparently believed he could resort to past practices as an interpretive aid, even if such practices were inconsistent with the unambiguous language of the CBA. *See* Aplt. App. at 34 ("The Company argued that this arbitrator should be guided by the 'Plain Meaning' Rule thereby precluding any consideration of evidence contrary to the literal language of the CBA. This arbitrator cannot accept such a simple solution to labor disputes . . . ."). Although the arbitrator acknowledged that "[t]here is nothing in the CBA which specifically addresses 'call-in policy' procedures," *id*. at 35, the arbitrator failed to recognize that CP Kelco had reserved expressly the right to outline unilaterally such procedures in the CBA's Management Rights Article. For example, the Management Rights Article granted CP Kelco the right to "establish and enforce . . . policies . . . not inconsistent with this Agreement" and the right to "establish and to alter from time to time reasonable work and shop rules and regulations." *Id*. at 24, 46. The arbitrator erroneously imposed a new condition on these rights when he determined that CP Kelco was required to negotiate to an impasse over the implementation of the 2007 Call-In Policy. By imposing this new condition on unilateral management rights, the arbitrator created a conflict with, and improperly amended, an unambiguous provision of the CBA—that is, the Management Rights Article.

In addition, the parties themselves incorporated limits to the arbitrator's authority within the CBA's Grievance Procedures Article. As the arbitrator

-14-

found, the CBA expressly limits the arbitrator's authority "to the application of this Agreement, and he/she shall have no authority to render an award which amends, alters, or modifies any provision of this Agreement."[3] *Id*. at 24, 50. As the CBA expressly recognizes, the arbitrator had no authority to amend the Management Rights Article to require CP Kelco to bargain to an impasse with the Union before issuing a policy or work rule.[4] Therefore, the arbitrator exceeded

---

[3] The Union does not address this contractual limit despite the fact that CP Kelco relied upon that language in part in its motion to vacate.

[4] For the first time on appeal, the Union argues that the 2007 Call-In Policy was not a work or shop rule. However, we do not consider arguments raised for the first time on appeal absent extraordinary circumstances. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1143 (10th Cir. 2009). The Union has demonstrated no extraordinary circumstances.

The Union also attempts to raise other arguments on appeal for the first time. In particular, the Union attempts to expand its challenge to the district court's decision beyond its previous reliance on the narrow scope of judicial review as the sole basis for its challenge. The Union now argues that: (1) the arbitrator relied on past practices to fashion its remedy and did not rely on past practices in reaching its conclusion on the merits; (2) the CBA was ambiguous and so the arbitrator properly interpreted it through application of statutory-interpretation principles; and (3) there is an alternative interpretation of the "essence" test that the district court should have considered. However, our independent review of the record confirms CP Kelco's contention that the Union failed to raise any of these arguments below. In fact, in response to questioning at oral argument, the Union admitted that it had not made at least one of these arguments before the district court—*viz*., its statutory-interpretation argument. As previously suggested above, it is well-settled that we generally will not consider arguments or issues raised for the first time on appeal. *See, e.g.*, *id*. at 1143 ("Absent extraordinary circumstances, we will not consider arguments raised for the first time on appeal."); *Utah Envtl. Congress v. Russell*, 518 F.3d 817, 828–29 (10th Cir. 2008) ("Generally, we do not consider issues not presented to, considered and decided by the trial court because an appellant's new

(continued...)

-15-

his authority in imposing this additional requirement and it was proper for the district court to vacate the arbitration award.[5]

## III. Conclusion

Because the arbitrator exceeded his authority by not drawing his decision from the essence of the CBA and by impermissibly amending the Management Rights Article, we **AFFIRM** the district court's vacation of the arbitrator's award and its grant of summary judgment in favor of CP Kelco.

ENTERED FOR THE COURT

Jerome A. Holmes
Circuit Judge

---

(...continued)
argument gives rise to a host of new issues, and [Appellee] had no opportunity to present evidence it may have thought relevant to these issues." (alteration in original) (citation omitted) (internal quotation marks omitted)); *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002) ("[W]e will not consider arguments raised for the first time on appeal. This is true whether an appellant is attempting to raise a bald-faced new issue or a new theory on appeal that falls under the same general category as an argument presented at trial." (citation omitted) (internal quotation marks omitted)). The Union has not convinced us that extraordinary circumstances exist that would overcome our reluctance to reach these additional arguments.

[5] Because we have determined that the arbitrator exceeded his authority, we need not address CP Kelco's assertion that the arbitrator erred in finding that CP Kelco had engaged in negotiations over the 2003 Call-In Policy, but not over the 2007 Call-In Policy, given the arbitrator's allegedly similar description of the events leading up to the development of both policies.

-16-