FILED
United States Court of Appeals
Tenth Circuit

August 12, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

CHEVRON MINING INC., f/k/a The
Pittsburg & Midway Coal Mining Co.,

      Plaintiff-Counter-Defendant-
Appellant,

v.

UNITED MINE WORKERS OF
AMERICA LOCAL 1307,

      Defendant-Counter-Claimant-
Appellee.

No. 10-8074

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 09-CV-00277-NDF)**

Bradley T. Cave, P.C. of Holland & Hart, L.L.P., Cheyenne, Wyoming, for
Plaintiff-Counter-Defendant-Appellant.

Arthur R. Traynor III of United Mine Workers of America, Triangle, Virginia, for
Defendant-Counter-Claimant-Appellee.

Before **KELLY**, **BALDOCK**, and **LUCERO**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiff-Appellant Chevron Mining, Inc. ("CMI") appeals from the district

court's denial of its motion to vacate an arbitration award reinstating CMI employee John Weston following his termination for just cause by CMI. CMI argues that the arbitrator's decision to reverse CMI's just cause determination based upon "forgivable" rule violations cannot be said to "draw its essence" from the governing collective bargaining agreement and that the award imposed contradicts and modifies the terms of the collective bargaining agreement. We affirm.

Background

Mr. Weston was terminated when he failed to follow company rules requiring him to supervise refilling of his fuel truck and he was not forthcoming about the ensuing consequences. The parties do not dispute the relevant facts. Prior to the incident involved here, Mr. Weston received three oral warnings for unexcused absences or failure to report, and a written warning and three-day suspension for horseplay. Aplt. App. 276, 278, 280, 282. On October 8, 2009, Mr. Weston proceeded to refill a 5000-gallon diesel fuel tank truck at the end of his swing shift. Id. at 8. He started the refueling then sat in the cab of the truck where he was joined by his ride-share partner, Tom Higgens. They were discussing elk hunting when they heard what they described as a bang or pop. Mr. Weston got out of the cab and shut off the supply pump, but the tank was already overfilled.

Mr. Weston did not report the spill. Instead, he attempted to wash off the quantity of fuel that had accumulated on top of the tank. He asked his partner not to discuss the incident. Id. at 8-10. He then dropped off the truck, telling the B-Shift Greaser that he had simply overfilled the truck and that it may need to be washed off. The tanker was used to fuel four pieces of equipment before it was discovered that there was water in the diesel fuel, causing the engines to malfunction. Id. at 8. This led CMI to conduct an investigation into the source of the contamination. During the course of its investigation, CMI sought statements from Mr. Weston and Mr. Higgens. Neither recounted a spill in his statement. Id. at 9. Nevertheless, CMI suspended Mr. Weston with intent to discharge effective October 13, 2009. Id. at 9, 266. CMI then scheduled management-union joint interrogations with both men, during the course of which each admitted to the spill and the concocted stories about it. Id. at 9-10.

CMI and the Union are parties to the Western Coal Wage Agreement of 2006 between the Pittsburg & Midway Coal Mining Co. and the International Union United Mine Workers of America (the "Collective Bargaining Agreement" or "CBA"). The CBA requires CMI to establish "just cause" for discipline and discharge of employees. Id. at 237 ("No Employee covered by this Agreement may be disciplined or discharged except for just cause. The burden shall be on the Employer to establish grounds for discharge in all proceedings under this Agreement."). It does not, however, define "just cause."

- 3 -

Mr. Weston's decision to sit in the cab during refueling was contrary to company training and posted notices. See id. at 301-07. Mr. Weston also violated CMI's formal Rules, Work Practices, Regulations and Instructions. The CBA provides that "[r]easonable rules and regulations of the Employer, not inconsistent with federal and state laws, for the protection of the persons of the Employees and the preservation of property shall be complied with." Id. at 193. Upon his hiring in June 2006, Mr. Weston received and signed a certification that he had read CMI's Rules, Work Practices, Regulations and Instructions. Id. at 299. The certification provided that "[v]iolation of rules or work practices will subject employee to corrective action up to and including discharge." Id. These Rules state: "Signs posted throughout the mine property are messages to warn of danger, or instruction on what to do or not to do. Read and comply with all warning signs." Id. at 290. They also prohibit "[g]iving false or misleading information, or withholding relevant information, in any matter affecting your employment or the Interests of the Company," "[i]nattention to your job," and "[k]nowing violation of, or disregard for, environmental, health or safety rules, practices or legal requirements." Id. at 295-96.

The procedure for discharge is as follows: (1) If CMI concludes that certain conduct warrants discharge, "the Employee shall be suspended with intent to discharge and shall be given written notice stating the reason"; (2) the employee may meet with the mine superintendent or manager in the presence of a union

- 4 -

representative; (3) if CMI continues to intend to discharge the employee, the employee remains on suspension with intent to discharge for a period of time necessary to permit the employee to file a grievance and have the grievance arbitrated. Id. at 237. The CBA provides that if the arbitrator determines that the employer has "failed to establish just cause for the Employee's discharge, the Employee shall be immediately reinstated to his job." Id.

Mr. Weston challenged his discharge on the ground that CMI lacked just cause. CMI asserted discharge was appropriate because, given that Mr. Weston had been disciplined four times during his three years of employment, no mitigating factors were present to justify a lesser penalty than discharge. Id. at 17. The arbitrator deemed the issue to be: "Did the company have just cause when it discharged the Grievant? If not, what is the remedy?" Id. at 8.

The award portion of the arbitrator's decision states,

> The Company did not have just and sufficient cause to discharge John Weston. However, he was guilty of negligence and providing false information during an investigation. He is to be suspended for thirty (30) working days starting October 8, 2009 and returned to work without back-pay but without loss of seniority or benefits, followed by a probationary period of 180 days during which any violation of the Health & Safety Rules and/or negligence pertaining to his job duties will constitute just cause for immediate discharge.

Id. at 20. In the Discussion portion of the decision, the arbitrator laid out his rationale for imposing probation:

Yes, this is dishonest and deserves punishment. But we must consider motive and here we find it was not for personal gain but to prevent loss of his reputation, seniority, and benefits. Is this not far more forgivable than if he had done it for personal gain? I believe it is and that John is entitled to a last chance agreement such has been done with other employees.

Id.

## Discussion

We review a district court's order vacating or enforcing an arbitration award de novo. U.S. Energy Corp. v. Nukem, Inc., 400 F.3d 822, 830 (10th Cir. 2005) (citation omitted). In doing so, however, we give "great deference" to an arbitrator's decision. Id. An arbitral award should be reversed only if based on a "manifest disregard" of the law, defined as "willful inattentiveness to the governing law." Id. (quoting Litvak Packing Co. v. United Food & Commercial Workers, 886 F.2d 275, 276 (10th Cir. 1989); Jenkins v. Prudential-Bache Sec., Inc., 847 F.2d 631, 634 (10th Cir. 1988)). If the decision "draws its essence from the collective bargaining agreement" then it must be upheld. LB&B Assocs., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113, 461 F.3d 1195, 1197 (10th Cir. 2006) (internal quotation marks and citation omitted). We explained in Denver & Rio Grande Western Railroad Co. v. Union Pacific Railroad Co.:

Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling law) do not justify review or reversal on the merits of the controversy. Because of the courts' limited ability to review arbitration awards, their powers of review have been described as

- 6 -

"among the narrowest known to the law."

119 F.3d 847, 849 (10th Cir. 1997) (citations omitted).

CMI argues that the arbitrator, despite the language of the decision indicating otherwise, implicitly found that CMI had just cause to terminate the employee, especially by finding that the employee was "guilty as charged." Aplt. Br. 20. Even assuming the arbitrator found CMI lacked just cause for termination, CMI argues that by determining the employee's conduct was "forgivable," the arbitrator relied on his own sense of justice rather than an interpretation of the CBA. Id. at 5. CMI also argues that by imposing a probationary period, or last chance agreement, the arbitrator exceeded the scope of his authority, and that once the arbitrator determined there was an absence of just cause, the only permissible action was for CMI to reinstate Mr. Weston unconditionally to his position. Id. at 5-6; Aplt. Reply Br. 9.

A.    Just Cause

CMI's argument that a finding of just cause may be inferred from the arbitrator's decision in this case or that the arbitrator ruled in contradictions is not persuasive given the express and unequivocal finding that CMI lacked just cause. CMI does not dispute that the arbitrator stated expressly that CMI lacked just cause despite his prior statement that "Weston was guilty as charged." See Aplt. App. 20. And there is no dispute that Mr. Weston committed the conduct in question and violated work rules, which is the conclusion more properly evinced

- 7 -

by the statement that "Weston was guilty as charged."

In any event, under our precedent, findings that Mr. Weston committed the conduct in question and that CMI lacked just cause are not mutually exclusive; instead where a rule could be interpreted either as articulating examples of conduct all of which would amount to just cause for termination or as proscribing certain conduct that may or may not amount to just cause, we give deference to an arbitrator's just cause determination.  See Local No. 7 United Food & Commercial Workers Int'l Union v. King Soopers, Inc., 222 F.3d 1223, 1227 (10th Cir. 2000); Local No. 113, 461 F.3d at 1198.

As in Local No. 7 and in Local No. 113, a finding of just cause in this case does not necessarily follow from a finding of Rules violations.  Because CMI's Rules simply provide that violations may be grounds for termination, one can contemplate circumstances where noncompliance with the Rules, "subject[ing] employee to corrective action up to and including discharge," would nevertheless fall short of the just cause required for termination by the CBA.  We need not comment on whether this is the best construction of the CBA; but we do conclude the arbitrator's decision was drawn "from the essence" of its terms.

B.    "Forgivable" Rules Violations

We also must conclude that the arbitrator's conclusion that Mr. Weston's conduct was "forgivable" in this case is not indicative of inattentiveness to the CBA and governing law.  In Kennecott Utah Copper Corp. v. Becker, we made it

clear that "[i]n determining whether or not the arbitration award 'draws its essence' from the CBA, a reviewing court looks to the award itself and not at every phrase contained in the arbitrator's opinion." 195 F.3d 1201, 1204 (10th Cir. 1999) (quoting United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 598 (1960) (internal quotation marks omitted)). Therefore, in that case, use of words such as "believe" did not compel the conclusion that the arbitrator was dispensing his own brand of justice rather than interpreting the contract. Id. We noted that focusing on the language of an arbitration decision rather than its outcome–in this case reinstatement–"may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement." Id.

In Kennecott an employer sought to vacate an arbitration award requiring the employer to reinstate an employee even though he tested positive for marijuana after an accident. The collective bargaining agreement stated, "No employee shall be disciplined or discharged without just cause," but did not define "just cause." Id. at 1203. Employees were also subject to a "Drug and Alcohol Abuse Policy" proscribing use of drugs in the workplace and which stated, "Compliance with this Policy is a condition of employment. The Company intends to take disciplinary action, up to and including termination, against any employee who violates this Policy." Id. The arbitrator found that Kennecott was

justified under the CBA in testing the employee for drugs but that just cause required more than a positive drug test–in the manner of evidence showing on-the-job impairment, possession, or use.  Id.  The arbitrator ordered reinstatement but denied back pay because the grievant had initially lied about his drug use.  Id.  In upholding the arbitration award we reasoned that "[t]he interpretation of just cause to require a prerequisite, such as on-the-job impairment, before termination is allowed draws its essence from the CBA and must be upheld."  Id. at 1205 (citing Exxon Corp. v. Esso Workers' Union, Inc., 118 F.3d 841, 845-46 (1st Cir. 1997)).  The same principle applies here.

C.      "Last Chance Agreement"

Finally, the arbitrator's imposition of discipline was not inconsistent with the award of reinstatement; it was within the arbitrator's discretion to fashion an appropriate remedy given the circumstances.  Enterprise Wheel & Car, 363 U.S. at 597 ("When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem.  This is especially true when it comes to formulating remedies."); Mistletoe Express Serv. v. Motor Expressmen's Union, 566 F.2d 692, 695 (10th Cir. 1977) ("In a proper case an arbitrator, in reliance on custom or usage in an industry, may construe a 'just cause' provision of a labor contract to include a progressive discipline requirement and may determine that certain conduct is 'just cause' for discipline but not for discharge."); e.g., Local

No. 7, 222 F.3d at 1229.

AFFIRMED.